EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Caribe Communications, Inc. H/N/C CaribCom | Certiorari |
| Recurrida | 2002 TSPR 83 |
| v. | 157 DPR _____ |
| Puerto Rico Telephone Co., Inc. Recurrente | |

Número del Caso: CC-2000-1062


Fecha: 18/junio/2002


Tribunal de Circuito de Apelaciones:
　　　　　　　Circuito Regional II


Juez Ponente:
　　　　　　　Hon. Gilberto Gierbolini


Abogados de la Parte Peticionaria:
　　　　　　　Lcdo. César T. Alcover Acosta
　　　　　　　Lcda. Luz Nereida Carrero Muñiz

Abogados de la Parte Recurrida:
　　　　　　　Lcda. Jessica Hernández Sierra
　　　　　　　Lcdo. Edwin Quiñones
　　　　　　　Lcdo. Francisco A. Rullán
　　　　　　　Lcdo. Omar E. Martínez Vázquez


Materia: Revisión Administrativa



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Caribe Communications, Inc.
H/N/C CaribCom

    Recurrida

        vs.                  CC-2000-1062      CERTIORARI

Puerto Rico Telephone Co.,
Inc.

    Recurrente

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de junio de 2002

¿Ostenta la Junta Reglamentadora de Telecomunicaciones (Junta) la autoridad o facultad legal para atender una reclamación, e indemnizar, por daños y perjuicios, conforme lo dispuesto en la Ley de Telecomunicaciones de Puerto Rico, Ley 213 del 12 de septiembre de 1996, 27 L.P.R.A. sección 265 et. seq.?

Esa es la interrogante que atendemos, y resolvemos, en el presente recurso. Contestamos la misma en la negativa. Veamos porqué.

I

La recurrida, Caribe Communications, Inc. h/n/c CaribCom es una corporación organizada bajo

las leyes del Estado Libre Asociado de Puerto Rico, autorizada a proveer servicios de telecomunicaciones en nuestra Isla desde el 12 de febrero de 1999. Dicha Compañía ofrece un servicio de tarjeta prepagada desde el 26 de noviembre de 1996, la cual consiste en que CaribCom finaliza la llamada originada por los poseedores de dichas tarjetas a través de un número "800", "888" ú "887". CaribCom operaba bajo el número de identificación de acarreador, "carrier identification code" (CIC), de tres dígitos a través del porteador San Thomas/San Juan hasta el 19 de marzo de 1999. Dicho número de acarreador facilita el acceso de los consumidores a los servicios que ofrece el porteador de determinado CIC, tanto al acarreador de servicio conmutado local como al proveedor de servicios de acceso interestatal. Así, CaribCom, acarreador de servicio conmutado estatal, depende de la red de la Puerto Rico Telephone Company (PRTC) para originar y terminar las llamadas de sus clientes.

CaribCom sostiene que la PRTC le notificó el 29 de septiembre de 1997 que comenzaría a implantar un plan de expansión de CICs de tres dígitos a cuatro, según lo requiere la Federal Communications Commmission (FCC), e indicó que todas las facilidades de CaribCom podrían procesar CICs de cuatro dígitos para el 1 de enero de 1998. No obstante, mediante epístola de 3 de julio de 1998, la PRTC le informó a CaribCom que el plan de expansión no estaba terminado debido a la huelga de los empleados telefónicos.

Así las cosas, para mediados de marzo de 1999, las llamadas de CaribCom comenzaron a canalizarse utilizando el CIC de cuatro

dígitos. Sin embargo, las llamadas de larga distancia originadas por clientes de CaribCom a través de los números "800" dejaron de llegar al conmutador de ésta dado que su CIC no estaba debidamente programado en el equipo "Siemmens" de la PRTC. Previamente, en reuniones entre PRTC y CaribCom, se habían discutido los problemas relacionados con la programación del CIC de esa Compañía. Dichos problemas persistieron hasta que las PRTC los resolvió el 7 de abril de 1999.

El 27 de diciembre de 1999, CaribCom demandó a la P.R.T.C. ante la Junta Reglamentadora de Telecomunicaciones (JRT) por alegada violación a ciertas disposiciones de la Ley de Telecomunicaciones de Puerto Rico, ante, reclamando, además, sobre un millón de dólares por la totalidad de los daños alegadamente sufridos.

El 31 de enero de 2000, la PRTC presentó ante la Junta una moción de desestimación por falta de jurisdicción, alegando que la Junta no tenía facultad para atender una reclamación de daños y perjuicios. El 2 de marzo de 2000, la Junta emitió resolución por medio de la cual declaró no ha lugar a la solicitud de desestimación de la demanda, afirmando que poseía jurisdicción para adjudicar el caso debido a que tiene autoridad implícita para otorgar daños al amparo de las disposiciones de la Ley 213, ante, y a tenor con el Reglamento de Práctica y Procedimiento General de la Junta.[1] Inconforme, la PRTC acudió ante el

---

[1] Además, dicha resolución hace referencia a una resolución del 1 de julio de 1999 en los casos consolidados JRT-1999-Q-0024 y 0038, en la cual la Junta expuso los fundamentos en apoyo de su determinación en cuanto a que tiene autoridad para otorgar daños. PRTC solicitó revisión de la misma. Mediante resolución,

Tribunal de Circuito de Apelaciones mediante recurso de revisión administrativa, alegando, en síntesis, que la Junta erró al determinar que tenía jurisdicción para adjudicar reclamaciones de daños y perjuicios.

Mediante resolución de 16 de noviembre de 2000, el foro apelativo intermedio expidió el auto y confirmó la determinación de la Junta. Razonó, de entrada, que los tribunales son los llamados a dilucidar si una acción administrativa está concebida o cobijada dentro de los poderes delegados o si, por el contrario, actuó *ultra vires* la agencia al abrogarse poderes no conferidos en ley. Junta Examinadora de Tecnólogos Médicos v. Anneris Elías, 144 D.P.R. 483 (1997); Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, res. el 12 de junio de 2000, 2000 TSPR 83.

Al confirmar la determinación de la Junta, sostuvo dicho foro judicial que la Ley de Telecomunicaciones, aun cuando no le concede expresamente a la Junta jurisdicción sobre reclamaciones de daños, dicho estatuto le confiere amplios poderes a dicha entidad, los cuales, interpretados liberalmente, incluyen la autoridad para atender reclamaciones en daños. Razonó que, a la luz de los propósitos que persigue la referida Ley y los poderes conferidos a la Junta, la facultad para conceder daños se puede inferir.

---

el tribunal apelativo confirmó la resolución de la Junta en los casos consolidados.

Inconforme con la determinación, PRTC acudió ante este Tribunal, vía certiorari, en revisión de dicha resolución. Le imputó al foro apelativo haber errado:

> ... al confirmar la determinación de la cual utilizó como fundamento su resolución del 1 de julio de 1999, abrogándose [sic] facultad legal para adjudicar reclamaciones de daños monetarios, aún [sic] cuando su ley orgánica guarda silencio en cuanto a dicha facultad.

> ... al confirmar la determinación de la agencia recurrida a pesar de que ésta utilizó erróneamente como fundamento su resolución del 1 de julio de 1999, para denegar la moción de desestimación de P.R.T.C., abrogándose [sic] facultad de adjudicar daños a base de disposiciones reglamentarias a pesar de que su ley orgánica no el [sic] confiere tal facultad.

> ... al confirmar la determinación de la agencia recurrida en cuanto a que dicha agencia posee facultad legal para adjudicar reclamaciones de daños aún [sic] cuando claramente surge que esa no fue la intención legislativa al crearse la referida agencia mediante la ley de telecomunicaciones.

> ... al concederle deferencia a la determinación de la J.R.T., a pesar de que la misma no guarda relación con el lenguaje claro de la ley de telecomunicaciones ni con la intención legislativa de dicho estatuto.

<u>Expedimos</u> el recurso. Contando con las comparecencias de las partes y estando en posición de resolver el mismo, procedemos a así hacerlo.

## II

La controversia trabada en el caso de autos, repetimos, gira en torno a determinar si la Junta Reglamentadora de Telecomunicaciones, aun cuando la Ley de Telecomunicaciones, ante, guarda silencio sobre ello, tiene autoridad legal para atender y conceder reclamaciones de daños y perjuicios. Ante la ausencia de delegación legislativa expresa a la Junta

Reglamentadora de Telecomunicaciones para conceder indemnización por daños y perjuicios, únicamente podría reconocérsele ese poder bajo un reconocimiento implícito de una autoridad conferida. En esa encomienda nos vemos en la necesidad de repasar varios principios de hermenéutica legal y de derecho administrativo.

Sabido es que las disposiciones específicas de una ley deberán ser interpretadas conforme con la intención legislativa y la política pública que la inspira. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed. Rev., San Juan, Pubs. J.T.S., 1987, Vol. I. Es por ello que hay que interpretar y aplicar las leyes en unión al interés social y fin esencial del mismo a la luz de la situación de hechos que se tiene ante sí. Pueblo v. Rodríguez Zayas, res. el 17 de febrero de 1999, 99 TSPR 15. Es decir, la interpretación de un estatuto debe observar y acatar el propósito perseguido en la implementación de la ley. A estos efectos y siguiendo la misma filosofía de hermenéutica legal, las diferentes secciones de un estatuto se deberán interpretar en conjunto, de manera armoniosa, más no aisladamente, para evitar resultados desatinados, confusos o absurdos. Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, ante.

Asimismo, en la esfera administrativa la ley es el medio o fuente legal que le confiere el poder a una agencia administrativa para velar por el cumplimiento de su ley habilitadora. Es la ley habilitadora el mecanismo legal que le

autoriza y le delega los poderes a la agencia administrativa para que actúe acorde con el propósito perseguido en la ley a través de la agencia. Dentro de ese marco de delegación, las agencias administrativas gozan de dos poderes esenciales: el poder de reglamentar al ejercer funciones cuasi-legislativas y el poder de adjudicar controversias al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia.

Al definir y delimitar la delegación de poderes cuasi-legislativos, los principios que sirven como guía para evaluar la validez de las actuaciones del mismo son los siguientes:

1- determinar si la ley autoriza la actuación administrativa;
2- si se delegó el poder de reglamentación;
3- si la reglamentación está dentro de los poderes delegados;
4- si al aprobarse la reglamentación, se cumplió con las normas procesales; y
5- si la reglamentación es arbitraria o caprichosa. Montoto v. Lorie, 145 D.P.R. 30 (1998); Luan Investment Corp. v. Román, 125 D.P.R. 533 (1990); Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991); M. & B.S., Inc. v. Dept. de Agricultura, 118 D.P.R. 319. 326 (1987).

Además, como bien sintetiza el Prof. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Segunda Edición, Forum, Columbia, 2001, págs. 50-51, nuestra jurisprudencia ha establecido "una serie de principios que orientan con claridad y precisión sobre la cuestión de delegar el poder de reglamentar o cuasi-legislativo, a saber:

1. Los estatutos gozan de una presunción de validez constitucional y le corresponde a quien los ataca el peso de la prueba para demostrar que no lo son;

    2.    la delegación de poderes legislativos es válida en tanto en cuanto provean guías adecuadas y suficientes que limiten el uso del poder delegado;

    3.    la discreción conferida a los organismos administrativos para ejercitar el poder delegado no puede ser ilimitado, y

    4.    la delegación puede contener poderes amplios y generales y no tienen que ser precisados con exactitud matemática."[2]

Así, bajo la interpretación amplia, abarcadora y flexible de la concepción de la doctrina de delegación de poderes, la validez de dicha delegación se sostiene si el mismo cumple el fin de su ley habilitadora y se encuentra dentro del poder conferido en ley. "Sin embargo, el poder de delegar en forma amplia obliga a examinar el estatuto desde la vertiente de si goza o no de garantías procesales y sustantivas que protejan los derechos de los participantes del proceso administrativo." Fernández Quiñones, ante.

Cabe señalar que bajo la doctrina de delegación de poderes, es preciso tener presente que el organismo administrativo goza de las funciones que se le han encomendado legislativamente y aquellas que surgen de su actividad o encomienda primordial. Es decir, la actividad realizada por la agencia tiene que formar parte y estar dentro de la actividad sujeta a la reglamentación y fiscalización del ente administrativo.

_____

[2] Véase, Luce & Co. v. Junta de Salario Mínimo, 62 D.P.R. 452 (1944); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953); López Salas v. Junta de Planificación, 80 D.P.R. 646 (1958); Consejo de Educación Superior v. U.I.A., 120 D.P.R. 224, 241 (1987); Viajes Gallardo v. Clavell Berdecía y C.S.P., 131 D.P.R. 275 (1992); López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987).

Es por ello que, dada la deferencia judicial hacia las decisiones y actuaciones administrativas, por éstas poseer conocimientos especializados en los asuntos particulares que le han sido encomendados, la revisión judicial se limita esencialmente a examinar tres aspectos: (1) la concesión del remedio apropiado; (2) las determinaciones de hecho; y (3) las conclusiones de derecho del organismo administrativo. Sec. 4.5 de la ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175; Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 129 (1998); Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85 (1997); Miranda v. C.E.E., 141 D.P.R. 775 (1996).

Al ejercer su función revisora, en primer lugar, el tribunal determinará si la actuación administrativa se ajusta al poder delegado. Misión Ind. P.R. v. J.P., Id.; Viajes Gallardo v. Clavell, ante; Hernández Denton v. Quiñónez Desdier, 102 D.P.R. 319 (1974). En ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca al poder conferido es una actuación *ultra vires* de la agencia administrativa y, por ende, nula. Ramos Acevedo v. Municipio de Aguadilla, res. el 11 de abril de 2000, 2000 TSPR 52; Misión Industrial, Id.

Dentro de los poderes delegados, la ley habilitadora, en ocasiones, fusiona el poder cuasi-legislativo con el poder cuasi-judicial en algunas agencias administrativas; esto es, determinada agencia puede disfrutar tanto del poder de reglamentar como del poder de adjudicar controversias dentro de su área de especialización o "expertise", propios al ámbito

administrativo. Cuando las agencias administrativas ejercen su poder adjudicativo, en efecto, éstas realizan funciones análogas a las que realizan los tribunales. Quiñones v. San Rafael Estates, 143 D.P.R. 756, 764 (1997); López Vives v. Policía de Puerto Rico, 118 D.P.R. 219, 230 (1987); Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218, 224 (1974).

Es de notar que este Tribunal ha resuelto que algunas agencias administrativas gozan de la autoridad para conceder daños y perjuicios aun cuando su ley habilitadora así no lo especifica. En U.T.I.E.R. v. J.R.T., 99 D.P.R. 512 (1970), resolvimos que la Junta de Relaciones de Trabajo tiene la autoridad para conceder indemnización por daños y perjuicios aun cuando su ley habilitadora no le confirió expresamente dicho poder. Reconocimos que, conforme los amplios poderes que la Asamblea Legislativa le otorgó a la referida Junta de Relaciones para ejecutar los propósitos y la implantación de la política pública de la ley que administra, la Junta implícitamente posee esa facultad. Al así resolver, precisamos que tal facultad proviene no sólo de los amplios poderes delegados para implementar la política pública de su ley habilitadora, sino en virtud de las circunstancias especiales que ocupan la zona de las relaciones obrero-patronales. Resolvimos que la facultad de la Junta de Relaciones de Trabajo para imponer daños por la comisión de una práctica ilícita del trabajo, como lo es una huelga ilegal o violaciones de convenios colectivos, era el único remedio para efectivamente evitar las prácticas y así

cumplir con la política pública de la ley que la Junta administra.

Recientemente, en Quiñones Irizarry v. San Rafael Estates, ante, reiteramos que la facultad implícita de una agencia administrativa para conceder daños debe manifestarse a través de las facultades conferidas para implementar la política pública de su ley orgánica y que la concesión de daños por la agencia adelanta los intereses de su legislación habilitadora. Destacamos que, en esta clase de situaciones, es preciso indagar si la reclamación en daños y perjuicios tiene una relación directa y sustancial con el servicio que presta la agencia administrativa en particular. Expresamos en el citado caso, por último, que:

> ... la deseabilidad de que las reclamaciones de daños que surgieran de querellas sobre incumplimiento de contrato o defectos de construcción, se resolvieran administrativamente en D.A.Co. para así evitar la presentación del caso nuevamente en los tribunales. Asimismo se especificó que la adjudicación de las querellas sería conforme a derecho.
> Concluimos que de las leyes reseñadas surge con claridad la facultad de D.A.Co. para imponer compensación por daños y perjuicios por la omisión de constructores en reparar los defectos de construcción según definidos en el Reglamento del Negocio de Construcción. Esas reclamaciones tienen una relación directa y sustancial con el servicio público que D.A.Co. está obligado por ley a ofrecer a los consumidores. Al esta agencia ejercer esa facultad, adelanta los intereses de su ley habilitadora que se sintetiza en el deseo de proteger a los consumidores de prácticas indeseables por parte de los constructores y de proveer un remedio rápido, efectivo y sencillo, sin tener que recurrir a los tribunales y sufragar los costos de un litigio contra una parte que, como regla general, tiene más recursos. Págs. 772-773. (Énfasis suplido.)

En fin, la autoridad para conceder daños por parte de una agencia administrativa se deriva de la propia ley orgánica que expresamente le confiere tal facultad a la agencia; o porque el poder está consignado implícitamente en su amplia facultad para conceder remedios; o cuando está relacionado con el servicio que presta la agencia y ésta lo ejerce para adelantar los propósitos de su ley habilitadora. Quiñones v. San Rafael Estates, ante, a la pág. 765. Dicho de otra forma, cuando la ley no le confiere a una agencia expresamente el remedio de conceder daños, dicho poder se puede inferir a base de la premisa jurisprudencial de que los amplios poderes delegados a la agencia para implantar la política pública de una ley, en ciertos casos, incluyen el poder de conceder daños, siempre y cuando el mismo adelante o propicie los intereses de la ley y la política pública que la inspiró.

Examinamos la Ley de Telecomunicaciones y los poderes conferidos a la Junta que ésta crea, a la luz de las normas de derecho administrativo anteriormente expuestas.

III

La Asamblea Legislativa de Puerto Rico aprobó la Ley de Telecomunicaciones de Puerto Rico de 1996, Ley Núm. 213 del 12 de septiembre de 1996, que, a su vez, proviene de la Ley Federal de Telecomunicaciones del 1996, que, a su vez, enmendó la Ley Federal de Telecomunicaciones, 47 U.S.C.A. sec. 151 et seq., estableciéndose un régimen de desregulación dirigido a eliminar las barreras de competencia en el campo de las

telecomunicaciones y así abrir dicho mercado a la libre competencia. Para cumplir con estos propósitos, dicho estatuto federal eliminó todas las franquicias de monopolios de las compañías locales e impuso obligaciones a los acarreadores de servicios telefónicos, como la de interconectarse con otros acarreadores, y prohibió a los acarreadores locales establecer condiciones discriminatorias o prohibir la reventa de los servicios de telecomunicaciones. Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, ante.

Por su parte, y siguiendo el mismo objetivo de la ley federal, la Ley de Telecomunicaciones de Puerto Rico, declaró como política pública lo siguiente:

> (a) Reconocer el servicio de telecomunicaciones como uno cuya prestación persigue un fin de alto interés público dentro de un mercado competitivo;
> (b) que se provea el servicio universal a un costo justo, razonable y asequible para todos los ciudadanos;
> (c) repartir de forma equitativa entre todas las compañías de telecomunicaciones las obligaciones, responsabilidades y cargas adscritas al desarrollo y preservación del sistema universal;
> (d) establecer mecanismos de apoyo específicos, predecibles y suficientes para preservar y desarrollar el servicio universal;
> (e) fomentar la inversión de capital en el desarrollo de la infraestructura de las telecomunicaciones;
> (f) asegurar la disponibilidad del más amplio número de posibilidades competitivas en la oferta de servicios y facilidades de telecomunicaciones;
> (g) promover la competencia y utilizar las fuerzas del mercado como factor primordial en la determinación de precios, términos, disponibilidad y condiciones de servicio;
> (h) propiciar la interconexión y la interoperabilidad entre las compañías de telecomunicaciones;
> (i) asegurar que no existan barreras reglamentarias ni procedimientos administrativos

innecesarios que entorpezcan la competencia en el mercado;

(j) simplificar el proceso reglamentario en aquellas situaciones en que la reglamentación sea necesaria, y dirigir la reglamentación al fomentar del bienestar del consumidor y a penalizar las prácticas anti-competitivas en el mercado de las telecomunicaciones;

(k) reglamentar a los proveedores de servicios de manera compatible con su posición en el mercado y la influencia que ejercen sobre los consumidores;

(l) promover el establecimiento de precios basados en el costo de los servicios prestados (cost-based pricing), a fin de que los consumidores paguen por los servicios que realmente reciben y con arreglo a lo que disponga o autorice la Ley Federal de Comunicaciones;

(m) eliminar el subsidio directo e indirecto entre servicios no-competitivos al igual que prohibir cualquier clase de subsidio para sustentar precios irrazonablemente bajos cuyo propósito sea reducir la competencia o perjudicar a algún competidor;

(n) proteger el derecho a la intimidad de los usuarios de servicios de telecomunicaciones y velar porque se cumplan las disposiciones constitucionales y legales que garantizan este derecho;

(o) concentrar en una sola agencia del Estado Libre Asociado la jurisdicción primaria relacionada con la reglamentación del campo de las telecomunicaciones;

(p) regir su proceso de reglamentación por el llamado proceso de abstención (forbearance) como lo establece la Ley Federal en cuanto a los proveedores de servicio de telecomunicaciones, desempeñando la función de guardián del ambiente competitivo y permitiendo en primera instancia que sea este ambiente el que en efecto reglamenta el comportamiento de las compañías participantes. Las compañías a su vez se comprometerán a buscar, también en primera instancia, soluciones negociadas para controversias entre ellas, acudiendo a los foros administrativos y/o judiciales si los esfuerzos de negociación de buena fe se hubieren agotado.

(q) Dar acceso a servicios de telecomunicaciones, razonablemente comparables a los provistos en áreas urbanas, a los consumidores en toda la Isla, incluyendo a los de bajos ingresos y los que residen en áreas rurales o en áreas en que sea costoso el acceso a tales servicios;

(r) garantizar el disfrute del servicio brindado sin temor de interrupción o interferencias irrazonables;

(s) garantizar que no se discrimine en la prestación del servicio por razón de raza, sexo, origen, religión o afiliación política;

(t) garantizar que no se descontinuará el servicio a ningún usuario sin mediar justa causa y, en todo caso, solamente después de una notificación adecuada;

(u) garantizar que aquellas interrupciones de servicio que sean inevitables deberán corregirse con la mayor rapidez posible. Si éstas excedieran de un tiempo razonable, las compañías de telecomunicaciones proveerán para la acreditación de la parte proporcional de la renta básica;

(v) garantizar que toda disputa sobre facturas o servicios deberá tramitarse en forma equitativa y diligente; y

(w) velar por que ninguna ley o reglamento del Estado Libre Asociado u ordenanza municipal límite, prohíba o tenga el efecto de limitar o prohibir, la capacidad de una compañía de telecomunicaciones para prestar servicios de telecomunicaciones competitivas a nivel intraestatal o interestatal. 27 L.P.R.A. sec. 265. (Énfasis suplido.)

En virtud de la política pública antes reseñada, la Ley creó la Junta Reglamentadora de Telecomunicaciones "como agencia encargada de reglamentar los servicios de telecomunicaciones en Puerto Rico y de dar cumplimiento y administrar este capítulo"[3], confiriéndole los poderes y prerrogativas necesarios para cumplir con dicho propósito. Véase: Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, ante.

La Sección 267f (b) de la referida Ley enumera las facultades que posee la Junta para velar por la consecución del fin esencial de la Ley, a saber:

(b) La Junta tendrá las siguientes facultades para asegurar el cumplimiento de este capítulo y sus reglamentos:

(1) Imponer multas administrativas razonables por violaciones a este capítulo, sus

_____
[3] 27 L.P.R.A. sec. 267(a).

reglamentos y órdenes; hasta un máximo de veinticinco mil ($25,000) dólares por violación.

(2) Exigir cualquier clase de información que sea necesaria para el adecuado cumplimiento de sus facultades, aclarando, sin embargo, que la información considerada confidencial por su fuente será debidamente salvaguardada y entregada exclusivamente al personal de la Junta con estricta necesidad de concederla, bajo cánones de no-divulgación. Cualquier reclamo de confidencialidad de información de una compañía de telecomunicaciones bajo este inciso, deberá ser resuelto de forma expedita por la Junta mediante Resolución a tales efectos, antes de que cualquier información alegadamente confidencial por su fuente sea divulgada. Aquella información suministrada por cada una de las compañías de telecomunicaciones relacionada a sus precios y cargos, según lo dispuesto en el inciso (a) de la sec. 269f de este título, será pública y disponible a cualquier persona que la solicite.

(3) Ordenar el cese de actividades o actos en violación de cualquier disposición de este capítulo, o los reglamentos de la Junta.

(4) Imponer y ordenar el pago de costas, gastos y honorarios por otros servicios profesionales y de consultoría, incurridos en procedimientos adjudicativos ante la Junta.

(5) Ordenar que se realice cualquier acto en cumplimiento de las disposiciones de este capítulo o los reglamentos de la Junta.

(6) Acudir a los foros que correspondan para hacer cumplir los propósitos de este capítulo, así como sus reglas, reglamentos, órdenes, resoluciones y determinaciones.

(7) Comparecer ante cualquier entidad privada, organización pública, tribunal, junta, comité, organización administrativa, departamento, oficina o agencia del Estado Libre Asociado de Puerto Rico o del Gobierno de los Estados Unidos en cualquier vista, procedimiento o materia que afecte o que pueda afectar los propósitos de este capítulo o los reglamentos que la Junta promulgue a los intereses de los consumidores de servicio de telecomunicaciones; y

(8) llevar a cabo cualesquiera otros actos, de ser necesarios, para asegurar el cumplimiento de este capítulo o los reglamentos que la Junta promulgue, tales como:

(A) Conducir vista públicas;

(B) emitir citaciones bajo apercibimiento de desacato, las que deberán ser firmadas por un miembro y ser notificadas personalmente o por

correo certificado con acuse de recibo;

(C) participar, a solicitud de parte, en negociaciones entre compañías de telecomunicaciones y mediar las diferencias que surjan en el curso de tales negociaciones; e

(D) intervenir como árbitro conforme lo dispuesto en la sec. 252(b) de la Ley Federal de Comunicaciones.

(c) La Junta tendrá autoridad para llevar a cabo inspecciones, investigaciones y auditorías, de ser necesarias, para alcanzar los propósitos de este capítulo.

(d) La Junta tendrá, además, los siguientes poderes y facultades:

**(1) Sustituir a perpetuidad, demandar y ser demandado como persona jurídica; y**

(2) otorgar contratos y formalizar toda clase de documentos que fuesen necesarios o convenientes en el ejercicio de sus poderes.

(e) Todo acuerdo entre la Junta y cualquier compañía de telecomunicaciones se llevará a cabo por escrito y toda documentación resultante se deberá mantener en archivo. La Junta establecerá sus oficinas e instalaciones separadas de cualquier compañía sujeta a su jurisdicción.

(f) Todas las acciones reglamentarias y determinaciones de la Junta se guiarán por la Ley Federal de Telecomunicaciones, por el interés público y especialmente por la protección a los derechos de los consumidores.

(g) La Junta de Telecomunicaciones creará un sistema de registro de las personas que no deseen a través de sus teléfonos se les presten promociones. 27 L.P.R.A. sec. 257f (b). (Énfasis suplido.)

Es preciso destacar que, dentro del marco de los poderes conferidos, la antes citada disposición estatutaria reconoce expresamente, como medida punitiva, la facultad de imponer multas administrativas por violaciones a su ley habilitadora y a sus reglamentos. La Junta tiene, además, la facultad expresa de imponer y ordenar el pago de costas, gastos y honorarios incurridos en los procesos adjudicativos ventilados ante ella. Igualmente, se le reconoce autoridad para ordenar el cese de

violaciones a la referida Ley y la potestad de ordenar que se cumplan con actos de conformidad con la ley y, en la negativa, la autoridad para acudir a los foros pertinentes para lograr que se cumpla con la misma. Como podemos notar, no obstante los amplios poderes conferidos a la Junta, la Ley no le concede expresamente a la referida Junta la potestad de imponer el remedio económico de daños y perjuicios.

La referida disposición estatutaria se limita a reconocer que la Junta tiene la facultad de penalizar conducta contraria a los postulados de la Ley de Telecomunicaciones, ante, y que ésta tendrá la facultad para efectuar los actos necesarios para asegurar el cumplimiento con dicho estatuto, los cuales enumera. Estas facultades, cónsonas con los propósitos de la ley, sirven para velar y fomentar la libre competencia en el campo de las telecomunicaciones para beneficio de los consumidores y vigilar que se desarrolle la libre competencia, sancionando a los que incumplan con la Ley a través de las multas e imponiendo otras medidas correctivas para exigir cumplimiento con los estatutos.

Como indicáramos en Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones, ante, la intención del legislador, al aprobar dicha Ley, y al crear la Junta, fue precisamente que ésta "tuviera poderes amplios para corregir la conducta anticompetitiva de las compañías". Concluimos en dicho caso que la Junta no sólo tenía la facultad de detectar conducta anticompetitiva, sino que, como parte de sus funciones de encauzar la referida conducta, podía implementar medidas

correctivas para modificarla, como lo es el fijar una tarifa "tope" a base del costo que la Junta entienda es apropiada y necesaria en protección del bienestar general de la industria de telecomunicaciones y, por ende, de la ciudadanía puertorriqueña ya que éste es el propósito que perseguía la Asamblea Legislativa al aprobar la Ley 213. Id.

No obstante la ausencia de mandato expreso en la Ley para la concesión de daños y perjuicios, la Junta de Telecomunicaciones se atribuyó ese poder al aprobar el Reglamento de Práctica y Procedimiento General de la Junta, Reglamento Número 5664 de 5 de agosto de 1997, en sus Artículos 7.2(b)(4) y 7.6(e)[4]. Ante la referida disyuntiva, ocurre uno de dos escenarios: en primer lugar, que la Junta posee la autoridad implícita de conceder daños dentro de la discreción conferida a la agencia para adelantar los propósitos de la Ley o, en la alternativa, que la Junta se excedió al aprobar unas

---

[4] El Artículo 7.2 (b), en lo pertinente, reza:
   El escrito se presentará, personalmente o por correo, en original y cuatro (4) copias legibles y exactas y contendrá la siguiente información de ambas partes [querellante(s) y querellado(s)]:

   [...]

   4. Remedio que solicita o remedios alternos, y la cuantía reclamada por concepto de daños sufridos. Deberá acompañar los documentos que tenga disponibles para sostener la cuantía reclamada.

   El Artículo 7.6 (e) del referido reglamento dispone:

   La Junta podrá imponer sanciones u otros remedios adicionales y ordenará, de entenderlo necesario, la indemnización al querellante de los daños y perjuicios ocasionados a éste por las acciones u omisiones de la parte querellada.
   (Énfasis suplido.)

disposiciones en su reglamento que le confieren la facultad de

conceder daños cuando ni estatutariamente ni implícitamente

poseía tal facultad. Ante dicha situación, resulta procedente

examinar el historial legislativo de la Ley de

Telecomunicaciones.

La Exposición de Motivos de la Ley 213, ante, revela que:

La Asamblea Legislativa, luego de investigar, analizar y determinar las necesidades y los intereses del pueblo de Puerto Rico en lo concerniente al desarrollo del área de las telecomunicaciones, y tomando en consideración las acciones del Gobierno Federal en cuanto a la extensión y aplicabilidad de estos servicios a la comunidad en general mediante la Ley Federal de Comunicaciones, ha determinado que es esencial establecer una junta que promueva la competencia total, igual y leal, y que facilite y estimule la construcción y desarrollo de facilidades de telecomunicaciones para permitir y asegurar a los ciudadanos de Puerto Rico, mejores y más variados servicios de telecomunicaciones a costos razonables para que estimule y fomente el desarrollo económico para el bienestar general del país.

Con ese objetivo en mente, la presente Ley crea la Junta Reglamentadora de Telecomunicaciones con los poderes y prerrogativas necesarios para establecer un régimen reglamentario que: (1) garantice la disponibilidad de servicios de telecomunicaciones universales a un costo razonable para todos los ciudadanos en Puerto Rico; (2) vele por la eficiencia del servicio telefónico, televisión por cable y otros servicios de telecomunicaciones; (3) garantice que se continúen prestando los servicios de índole social, tales como teléfonos públicos y rurales y guías de información que el pueblo necesita; (4) promueva la competencia; (5) permita y le asegure a los puertorriqueños los mismos privilegios de telecomunicación e información que disfrutan los ciudadanos en los Estados Unidos; y (6) salvaguarde al máximo el interés público.

[...]

La Asamblea Legislativa reconoce que la industria de las telecomunicaciones persigue el fin público de proveer a nuestra población acceso adecuado a servicios de telecomunicaciones, a tarifas y cargos razonables y asequibles. La Junta creada por esta Ley protegerá el interés público en general, asegurando a nuestra población el acceso a servicios de telecomunicaciones a tenor con los

postulados de servicio universal establecidos por la Ley Federal de Telecomunicaciones de 1996, la reglamentación promulgada al amparo de dicha ley y los objetivos de esta Ley.

La Junta creada por esta legislación operará en forma independiente y estará dotada con la capacidad y los poderes necesarios para asegurar, facilitar y estimular la construcción y desarrollo de las facilidades de todas las ramas de las telecomunicaciones en Puerto Rico, promoviendo la competencia justa y efectiva, y detectando y corrigiendo conducta anticompetitiva, a fin de fortalecer esta industria y, por ende, el desarrollo socioeconómico de la ciudadanía en general. (Énfasis suplido.)

**De hecho, la intención legislativa se reflejó palmariamente en las expresiones del Senador Rexach Benítez, quién solicitó que constara en el récord la intención legislativa de la medida, por ser ésta "una pieza importante, medular, que requiere que en el récord conste cuál es la intención de la Asamblea Legislativa al aprobar la misma." Diario de Sesiones, Senado de Puerto Rico, 24 de junio de 1996, pag. 29779. A esos efectos, se expresó, o plasmó en el récord, lo siguiente:**

"Intención Legislativa.- El P. Del S. 1500 se remite a la Ley Federal de Comunicaciones de 1996 y se ajusta a las disposiciones de ésta. Responde, además, a unos principios de política pública que deben pautar su interpretación, su implantación y su administración. A ese efecto afirmamos lo siguiente:

1. Independientemente del área donde vivan, todos los puertorriqueños deben tener acceso a un sistema de telecomunicación moderno, confiable, eficiente y a un costo que lo haga asequible a familias de ingresos bajos.

2. A ese propósito esencial obedece la apertura de los mercados de telecomunicaciones pautado en la Ley Federal y en el Proyecto que consideramos esta tarde.

3. La competencia en el mercado de las telecomunicaciones debe regirse por reglas y normas no discriminatorias, de igual aplicación a todas las empresas que participen en el mercado.

4. La Puerto Rico Telephone Company, propiedad del pueblo de Puerto Rico, debe estar en posición de competir en el mercado sin que se le impongan cargas, trabas o condiciones honerosas (sic) que no impone la Ley Federal a empresas en su misma situación.

5. La Junta Reguladora de las Telecomunicaciones debe tener toda la capacidad, los poderes y la discreción que la ley federal reconoce a los organismos reguladores estatales y ejercer esas prerrogativas cuando sea necesario.

6. La apertura del mercado de las telecomunicaciones haya dejado de ser un área de alto interés público y que las empresas que en él desenvuelvan hayan perdido el carácter de empresas de servicio público. Esto quiere decir que el propósito esencial en la reglamentación que la Junta Reguladora adopte es el establecer en Puerto Rico un sistema de telecomunicaciones universal, moderno, confiable, eficiente, y a un costo asequible a las familias menos afortunadas. A ese propósito esencial deben subordinarse los intereses particulares de las empresas privadas que compiten en el mercado de telecomunicaciones.

Reiteramos que estos propósitos de política pública deben regir la interpretación, la implantación y la administración de la ley cuya aprobación recomendamos al Senado en el día de hoy. Id., pág. 29780. (Énfasis suplido.)

Más adelante, reiteró:

Finalmente, debo señalar, para que quede claro en el récord, que la Junta Reguladora no es una junta tarifaria, o sea, que no existe para imponer o para fijar tarifas o cargos por servicio. Es una junta para ver lo que ocurre en el mercado y corregir o rectificar cualquier desviación de las empresas que compiten en el mismo; desviación, repito, de las normas que deben regir un mercado de competencia. Id., pág. 29794. (Énfasis suplido.)

No existiendo una provisión expresa en la Ley que le conceda el poder de concesión de daños a la Junta de Telecomunicaciones y teniendo este Tribunal la obligación, en vista de ello, de examinar y considerar cuál fue la intención legislativa en la decisión que tenemos que tomar, a esos efectos no debemos perder de perspectiva que, como hemos adelantado y

el historial legislativo claramente demuestra, <u>la Ley de Telecomunicaciones de Puerto Rico proviene de la Ley Federal de Telecomunicaciones</u>. Al establecer los poderes de la agencia encargada por velar el cumplimiento con lo relativo al campo de las comunicaciones, dicha ley federal dispone <u>específicamente</u> que la agencia encargada para velar por el cumplimiento de la ley, la "Federal Communications Comission (F.C.C.)", tendrá la potestad de otorgar una indemnización en daños a causa de violaciones a sus disposiciones por parte de los acarreadores de servicio. Es decir, dicha Ley <u>expresamente</u> le concede jurisdicción concurrente a la F.C.C. con los tribunales en lo referente a violaciones con sus disposiciones. A esos efectos, la Ley Federal establece:

> In case any common carrier shall do, or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee shall be taxed and collected as part of the costs in the case. 47 U.S.C.A. sec. 206.

> Por otra parte, la referida ley establece:

> <u>Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction</u>… 47 U.S.C.A. sec. 207. (Énfasis suplido.)

Nuestra Ley, no hay duda, <u>no</u> contiene disposiciones análogas a las anteriormente transcritas de la ley federal. ¿Significa ello que la Junta Reguladora local <u>no</u> tiene autoridad para conceder daños? Resulta, cuando menos, curioso que nuestro legislador --teniendo como guía los preceptos de la Ley Federal de Telecomunicaciones, ante, que establecen expresamente la jurisdicción concurrente entre los tribunales y la F.C.C.-- <u>no</u> incorporara disposición alguna sobre este particular en la ley local. Podría argumentarse, en consecuencia, que al legislador expresamente no incluir secciones análogas en la ley local pertinentes a los acarreadores de servicio, e incluir únicamente la partida de honorarios y costas incluidas en la antes citada disposición federal, <u>la intención del legislador fue precisamente reservar esa jurisdicción a los tribunales</u>. Es decir, al legislador excluir la delegación expresa a la agencia, delegación que ofrece la legislación federal, podría hacerse la inferencia razonable de que el legislador quiso mantener la facultad de concesión de daños en la competencia y jurisdicción de los tribunales.

Nos enfrentamos, no hay duda, a una interrogante difícil de resolver o contestar. ¿Son "suficiente" las expresiones del Senador Rexach Benítez para concluir que la Junta Reguladora local efectivamente tiene la autoridad para conceder daños y perjuicios? Por otro lado, ¿no resulta significativo que el legislador, no obstante tener como modelo la ley federal, no incluyera o acogiera la facultad de la junta federal sobre la

jurisdicción concurrente con los tribunales respecto a la concesión de daños?

Discrepamos del análisis de la Junta y del Tribunal de Circuito de Apelaciones en cuanto a la facultad implícita de la Junta para conceder daños pues, al examinar la Ley de Telecomunicaciones de Puerto Rico, ante, y su historial legislativo, dicha facultad no tiene una relación directa y sustancial con la ley, ni realmente adelanta los propósitos principales y fundamentales de la misma.

De hecho, somos del criterio que concederle esta autoridad a la Junta Reguladora puede tener el efecto contrario, esto es, de desvirtuar el propósito medular de la ley y retrasar las encomiendas y querellas, propias del conocimiento especializado de la agencia, para atender reclamaciones de daños y perjuicios, propias de los tribunales.

Además, ante reclamaciones que pueden alcanzar cantidades económicas sustanciales, que envuelven reclamaciones millonarias e involucran intereses propietarios, debe ser el foro judicial el llamado a garantizar el debido proceso de ley a través de todos los mecanismos y protecciones que caracterizan el procedimiento judicial; esto es, un descubrimiento de prueba plenario, el uso de las reglas de evidencia, el juicio por un juez imparcial a través del criterio de la preponderancia de la evidencia en los casos civiles.

Si bien es cierto que, al revisar determinaciones administrativas, debemos atribuirle deferencia a las decisiones e interpretaciones que las agencias administrativas

hacen de las leyes y reglamentos que ponen en vigor, Puerto Rico
Telephone Company v. Junta Reglamentadora de
Telecomunicaciones, ante,[5] no podemos extender esa deferencia
para comprender una delegación del poder adjudicativo en un
asunto que el legislador no delegó, ni expresa ni
implícitamente, que en nada adelanta o tiene una relación
directa y sustancial con los propósitos de la ley y que puede
tener el efecto de infringir el debido proceso de ley. En
reclamaciones de esta envergadura, repetimos, mediante las
cuales se resuelven controversias que envuelven reclamaciones
de daños y perjuicios de sumas millonarias y que abarcan
derechos propietarios, las partes envueltas merecen todas las
garantías de un debido proceso de ley, derecho consagrado en
el Artículo II, Sec. 7 de la Constitución del Estado Libre
Asociado de Puerto Rico. Ante la ausencia de un lenguaje
determinante, en torno a la delegación del poder adjudicativo
en materia de daños, no podemos imprimirle otro criterio que
no sea el de mantener dichas reclamaciones en el foro judicial.

En consecuencia, somos de la opinión que la Junta
Reguladora se excedió al arrogarse el poder de conceder daños
en el caso de marras, ello al amparo de su Reglamento. Al asumir
jurisdicción cuando no la poseía, su actuación resulta ser
ultra-vires y, por ende, nula ya que no posee una capacidad plena
y absoluta para otorgar daños en todo tipo de caso.[6]

---

[5] Véase, además, Municipio de San Juan v. J.C.A., res. el 14 de
diciembre de 2000, 2000 TSPR 183.
[6] Esta determinación no incluye aquellas situaciones limitadas
sobre la indemnización por daños ocasionados al servicio que
ofrecen otras compañías y a la propiedad relacionados con la

En mérito de lo anterior, procede decretar la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones, que confirmó la decisión de la Junta Reglamentadora de Telecomunicaciones respecto a su autoridad para entender en acciones de daños y perjuicios.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

expropiación y servidumbres legales, conforme lo establecido y delegado expresamente en el Artículo II-11 de la ley, ante.

Entendemos que el Reglamento tiene que <u>delimitar</u> la facultad de otorgar daños sólo en aquellos casos provistos en la Ley, pues, de otro modo, las disposiciones son ambiguas y prestan para que la Junta se exceda de la facultad conferida para incluir una potestad absoluta de conceder daños en cualquier situación o controversia. Sobre este aspecto, el propio Reglamento de la Junta, en su sección 12, provee lo siguiente:

"Si cualquier cláusula o disposición de este Reglamento fuere declarada ilegal o inconstitucional por un Tribunal de Justicia con jurisdicción y competencia, por sentencia final y firme, tal declaración no afectará la validez de las demás cláusulas del mismo, las que mantendrán su validez y efecto. El efecto de la declaración de nulidad o invalidez quedará limitado al artículo, sección o inciso objeto de dicha declaración judicial."

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Caribe Communications, Inc.
H/N/C CaribCom

    Recurrida

       vs.                            CC-2000-1062   CERTIORARI

Puerto Rico Telephone Co.,
Inc.

    Recurrente


SENTENCIA

San Juan, Puerto Rico, a 18 de junio de 2002


Por los fundamentos anteriormente expuestos, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, que confirmó la decisión de la Junta Reglamentadora de Telecomunicaciones respecto a su autoridad para entender en acciones de daños y perjuicios.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión disidente a la cual se unió el Juez Presidente señor Andréu García.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Caribe Communications, Inc.**
**H/N/C CaribCom**

    **Recurrida**

       **v.**                    **CC-2000-1062**      **Certiorari**

**Puerto Rico Telephone Co.,**
**Inc.**

    **Peticionaria**

**Opinión Disidente emitida por el Juez Asociado señor Hernández Denton a la cual se une el Juez Presidente señor Andréu García.**

San Juan, Puerto Rico, a 18 de junio de 2002.

    Por entender que la Junta de Telecomunicaciones de Puerto Rico tiene la facultad legal para atender y adjudicar reclamaciones de daños y perjuicios, disentimos.

I

Caribe Communications, Inc. (en adelante, CaribCom), presentó una demanda en contra de la Puerto Rico Telephone Company (en adelante PRTC) ante la Junta Reglamentadora de Telecomunicaciones de Puerto Rico (en adelante, la Junta) por la alegada violación de unas disposiciones de la Ley de Telecomunicaciones de Puerto Rico de

de 1996.[7]  Dicha compañía depende de la red de la PRTC para que las llamadas de sus clientes sean originadas y terminadas.  En su acción alegó que, a raíz de ciertos problemas de programación en el equipo de la PRTC, varias de las llamadas de sus clientes se vieron afectadas. Reclamó compensación por los daños sufridos como resultado de dichas violaciones.

Por su parte, la PRTC presentó una moción de desestimación alegando que la Junta no tenía facultad para atender una reclamación de daños y perjuicios. Sin embargo, la Junta la denegó tras concluir que poseía autoridad implícita para otorgar daños por virtud de la Ley de Telecomunicaciones.  Igualmente, amparó su determinación en el Reglamento de Práctica y Procedimiento General de la Junta, un reglamento que dicha entidad promulgó y que reconoce tal facultad.[8]

Inconforme, la PRTC acudió al Tribunal de Circuito de Apelaciones. Tras el examen de rigor, el foro apelativo confirmó a la Junta y determinó que la autoridad para atender reclamaciones por daños y perjuicios se deduce de los amplios poderes que la Ley de Telecomunicaciones le concedió a dicho organismo.

A solicitud de la PRTC, esta Curia expide el auto de Certiorari y revoca el dictamen recurrido al concluir que la Junta no tiene facultad legal para entender en acciones de daños y perjuicios. Respetuosamente, diferimos de este curso decisorio. De un examen detallado de las disposiciones legales pertinentes y de nuestra jurisprudencia interpretativa, concluimos que la Junta posee la

---

[7]     Ley Núm. 213 de   12    de   septiembre   de 1996, 27 L.P.R.A. sec. 265 et seq., (en adelante, Ley de Telecomunicaciones).

[8] Véase, Reglamento de Práctica y Procedimiento General de la Junta, Reglamento Número 5664 de 5 de agosto de 1997.

facultad legal para atender y adjudicar reclamaciones de daños y perjuicios.  Veamos.

II

A

En el pasado hemos tenido oportunidad de enfrentarnos a controversias análogas a la que hoy se nos plantea.  A tales efectos en Quiñones v. San Rafael Estates, 143 D.P.R. 756 (1997), indicamos que actualmente se acepta como válida la delegación a las agencias del poder de otorgar compensación por daños, ya sea porque específicamente en la ley habilitadora de la agencia se le concede dicha facultad o porque esté consignado, implícitamente, en su amplia facultad para conceder remedios.

Así, hemos validado la delegación a las agencias administrativas de la facultad para otorgar compensación por daños y perjuicios en dos (2) instancias: cuando las leyes habilitadoras de las agencias conceden expresamente esa facultad y; cuando no estando claramente facultadas para imponer daños, dicho poder está implícito en la amplia facultad de confeccionar remedios en la implantación de la política pública de la ley, y si al así hacerlo se adelantan los intereses de la legislación que las creó. Véase, Quiñones v. San Rafael Estates, *supra*.

El caso de autos es un ejemplo de esta segunda modalidad.  Esto es, el poder de la Junta para otorgar compensación por daños y perjuicios está implícito en los amplios poderes de la agencia en tanto las reclamaciones por daños tienen una relación directa y sustancial con el servicio público que ésta ofrece.  Además, al ejercer dicha facultad, la Junta adelanta los intereses de su ley habilitadora.  Véase, Quiñones v. San Rafael Estates, *supra*.

Incluso, la capacidad de la Junta para conferir daños es tan evidente que el propio legislador la dio por sentado, llegando al punto de eliminar la facultad del Departamento de Asuntos del Consumidor para entender en estos asuntos bajo el supuesto de que la Junta sería quién ejercitaría tal facultad. Veamos.

B

A raíz de la aprobación de la Ley Federal de Telecomunicaciones de 1996, 47 U.S.C. sec. 251 et seq., y luego de estudiar las necesidades de Puerto Rico en el área de las telecomunicaciones, la Asamblea Legislativa aprobó la Ley de Telecomunicaciones mediante la cual se creó la Junta. P.R.T.C. v. J. Reg. Tel. de P.R., res. el 12 de junio de 2000, 2000 TSPR 83.

La referida entidad se creó con los poderes y prerrogativas necesarias para establecer un régimen reglamentario que, *inter alia*, garantice la disponibilidad de servicios de telecomunicaciones universales a un costo razonable para los ciudadanos; vele por la eficiencia de los servicios de telecomunicaciones y; promueva la competencia.[9] De esta forma, la Junta quedó facultada por ley para reglamentar los servicios de telecomunicaciones en Puerto Rico, y además, para dar cumplimiento y administrar su propia ley habilitadora. P.R.T.C. v. J. Reg. Tel. de P.R., *supra*.

Entre los propósitos de la Ley de Telecomunicaciones se encuentran: (i) reconocer el servicio de telecomunicaciones como uno cuya prestación persigue un fin de alto interés público dentro de un mercado competitivo; (ii) asegurar la disponibilidad del más amplio número de posibilidades competitivas en la oferta de servicios y facilidades de telecomunicaciones; (iii) asegurar que no existan barreras reglamentarias ni procedimientos administrativos

innecesarios que entorpezcan la competencia en el mercado; (iv) simplificar el proceso reglamentario en aquellas situaciones en que la reglamentación sea necesaria y; (v) dirigir la reglamentación al fomento del bienestar del consumidor y a penalizar las prácticas anticompetitivas en el mercado de las telecomunicaciones.[10]

Para cumplir con tales propósitos, la Ley de Telecomunicaciones le confirió amplios poderes a la Junta. De esta forma se concentró en una sola agencia del estado la jurisdicción primaria relacionada con la reglamentación del campo de las telecomunicaciones para que desempeñara la función de guardián del ambiente competitivo.[11] En efecto, según la propia legislación, la Junta tiene jurisdicción primaria sobre todos los servicios de telecomunicaciones y sobre todas las personas que rindan estos servicios dentro de Puerto Rico y sobre todas las personas con un interés directo o indirecto en dichos servicios o compañías.[12]

Además, la Junta tiene jurisdicción sobre "[c]ualquier persona cuyas acciones u omisiones resulten en perjuicio de las actividades, recursos o intereses sobre los cuales la Junta posee poderes de reglamentación, supervisión o vigilancia, incluyendo cualquier persona que utilice su control sobre servicios o compañías de telecomunicaciones de tal manera que resulte en dicho perjuicio"; (Énfasis suplido).[13]

---

[9] Véase, exposición de motivos de la Ley de Telecomunicaciones.
[10] Véase, Ley de Telecomunicaciones, Art. I-2, 27 L.P.R.A. sec. 265.

[11] *Id.*

[12] *Supra*, Art. II-6, 27 L.P.R.A. sec. 267(e).

[13] *Id.*

De la exposición de motivos de la Ley de Telecomunicaciones también se puede apreciar la intención legislativa de crear a la Junta como una entidad con amplios poderes. Así, se indica:[14]

> **La Junta que crea esta legislación operará en forma independiente,** dotada con la capacidad y los poderes necesarios para asegurar, facilitar y estimular la construcción y desarrollo de las facilidades de todas las ramas de las Telecomunicaciones en Puerto Rico, **promoviendo la competencia justa y efectiva, y detectando y** corrigiendo conducta anticompetitiva, **a fin de fortalecer esta industria y, por ende, el desarrollo socioeconómico de la ciudadanía en general.** (Énfasis suplido.)

Precisamente, la propia Ley de Telecomunicaciones advierte que los poderes de la Junta se conceptualizarán ampliamente para poder alcanzar los propósitos de la ley. El legislador, consciente de que no sería práctico enumerar una lista exhaustiva de todos los poderes de la Junta, señaló que dondequiera que algún poder específico o autoridad sea otorgado a la Junta, la enumeración <u>no</u> se interpretará como que excluye o impide cualquier otro poder o autoridad de otra manera conferida a ésta. Indicó que, además de las facultades enumeradas, la Junta tendrá <u>todos los poderes adicionales implícitos e incidentales</u> que sean apropiados y necesarios para efectuar y llevar a cabo todos los poderes mencionados en la ley y para alcanzar los propósitos de ésta. A tales efectos, se dispuso:[15]

> Las disposiciones de esta Ley serán interpretadas liberalmente para poder alcanzar sus propósitos y dondequiera que algún poder específico o autoridad sea dada a la Junta, la enumeración no se interpretará como que excluye o impide cualquier otro poder o autoridad de otra manera conferida a ésta. La Junta aquí creada tendrá, además de los poderes enumerados en esta Ley, todos los poderes adicionales implícitos e incidentales que sean apropiados y necesarios para efectuar y llevar a cabo, desempeñar y ejercitar todos los poderes antes mencionados y para alcanzar los propósitos de esta Ley, sujeto al

---

[14] Véase, exposición de motivos de la Ley de Telecomunicaciones.

[15] Véase, Ley de Telecomunicaciones, Artículo II-10; 27 L.P.R.A. sec. 267i.

sobreseimiento de dichos poderes por legislación federal o reglas de la Comisión Federal de Comunicaciones.

C

En lo que respecta a la facultad de una agencia para adjudicar reclamaciones por daños y perjuicios en asuntos relacionados a las telecomunicaciones, debe advertirse que la misma no es de reciente creación.  De hecho, desde 1974 el Departamento de Asuntos del Consumidor (en adelante, D.A.Co.) ejercía dicha facultad.  Así lo reconocimos en Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153 (1980).  A tales efectos, el artículo 10 de la Ley Núm. 25 de 6 de mayo de 1974 disponía:

> El Departamento de Asuntos del Consumidor tendrá jurisdicción exclusiva y original para adjudicar toda reclamación de daños y perjuicios hasta la suma de cinco mil (5,000) dólares con motivo de negligencia en la prestación del servicio telefónico a los usuarios de la Autoridad [de Teléfonos de Puerto Rico] o de cualquiera de sus subsidiarias.

Este fue el estado de derecho vigente hasta 1996. Sin embargo, ante la eventual creación de la Junta, el legislador se dio a la tarea de modificar el mismo para atemperarlo con la premisa básica de que sería la Junta quién se encargaría de regular las telecomunicaciones a tenor con sus amplios poderes.  Por tal razón, mediante legislación se dispuso que D.A.Co. continuaría ejerciendo la facultad delegada hasta que la Junta implementara la reglamentación correspondiente para ejercerla. El legislador dio por sentado que la Junta que se crearía tendría la facultad para atender reclamaciones de daños y perjuicios por virtud de los amplios poderes que se le otorgarían para regular el mercado de las telecomunicaciones.  Véase la exposición de motivos de la Ley Núm. 204 de 7 de septiembre de 1996 (en adelante, Ley Núm. 204), la cual establece:

A fin de modernizar las disposiciones que regulan los medios y empresas de telecomunicaciones para atemperarlas con los avances y descubrimientos modernos, esta Asamblea Legislativa se propone adoptar una nueva legislación creando un organismo con jurisdicción exclusiva sobre los medios y empresas de telecomunicaciones. A este fin, la medida presentada propone eliminar la jurisdicción del Departamento de Asuntos del Consumidor para adjudicar las reclamaciones de daños y perjuicios con motivo de negligencia en la prestación del servicio telefónico[.]

Precisamente, la sección 2 de la Ley Núm. 204 indica:

El Departamento de Asuntos del Consumidor continuará atendiendo y adjudicando aquellas reclamaciones por daños y perjuicios hasta la suma de cinco mil (5,000) dólares que hayan sido presentadas ante su consideración con anterioridad a la presente Ley. De igual modo, atenderá todas aquellas reclamaciones que se instaren por daños y perjuicios **hasta la suma de cinco mil (5,000) dólares** por motivo de negligencia en la prestación de servicios telefónicos **presentada contra cualquier compañía de telecomunicaciones** hasta tanto la Junta Reglamentadora de Telecomunicaciones implemente la reglamentación correspondiente. **(Énfasis suplido).**

Como puede apreciarse, el legislador eliminó la facultad de D.A.Co. para entender en ciertas reclamaciones de daños pues suponía que la Junta lo sustituiría, ya que ésta sería la entidad idónea para atender las acciones de daños y perjuicios en aquellos asuntos relacionados a su competencia. Los amplios poderes con los que se creaba dicha entidad suponían que ésta tendría la facultad necesaria para entender las mismas.

De hecho, la Junta dio cumplimiento al mandato legal y mediante la "reglamentación correspondiente" delimitó dicha facultad. Así, la Junta promulgó el Reglamento de Práctica y Procedimiento General, *supra*, el cual dispone en su artículo 7.6(e): "La Junta podrá imponer sanciones u otros remedios adicionales y ordenará, de entenderlo necesario, la indemnización al querellante de los daños y perjuicios ocasionados **a éste por las acciones u omisiones de la parte querellada."; (Énfasis suplido).**

Es al amparo de este marco legal, y a tenor con nuestra jurisprudencia interpretativa, que debemos atender la interrogante que este recurso nos plantea: ¿tiene la Junta facultad legal para entender en reclamaciones de daños y perjuicios? Entendemos que sí.

III

Según hemos podido apreciar, la capacidad de la Junta para otorgar daños fue concebida por el legislador. La Ley Núm. 204 expresaba el entendimiento legislativo de que la Junta que se crearía tendría amplios poderes, inclusive el poder de otorgar daños. Por ello, expresamente se estableció una medida transitoria para que D.A.Co. continuara atendiendo las reclamaciones por daños y perjuicios por motivo de la negligencia en la prestación de servicios telefónicos <u>hasta tanto la Junta implementara la reglamentación correspondiente</u>, lo cual se hizo.

Precisamente, dicha facultad es un poder incidental, y una consecuencia necesaria, de los amplios poderes que la Ley de Telecomunicaciones le confiere a la Junta. La reclamación en daños, en muchas ocasiones, es inherente a la causa de acción que el legislador le encomendó a la Junta atender. Esto pues, las violaciones a las disposiciones de la Ley de Telecomunicaciones tienen un efecto económico directo en los consumidores o en las compañías competidoras.

Conscientes de esto, al analizar las facultades de la Junta hemos precisado que la intención de la legislatura al crear dicha entidad no fue únicamente que ésta detecte conducta anticompetitiva, sino que también <u>corrija</u> la misma. <u>P.R.T.C. v. J. Reg. Tel. de P.R.</u>, *supra*. A tenor con los propósitos de la ley, resulta evidente que entre las facultades correctivas que la Junta posee se incluye la autoridad para conceder daños. Tal poder es consistente con los

**amplios poderes que dicha entidad ejerce en protección del bienestar general de la industria de telecomunicaciones y, por ende, de la ciudadanía puertorriqueña. La imposición de daños es una herramienta efectiva que tiene la Junta para alcanzar los propósitos de la Ley de Telecomunicaciones de proteger al consumidor, promover la competencia y corregir prácticas anticompetitivas.**

Una reclamación de daños ante la Junta tiene una relación directa y sustancial con el servicio público que dicha agencia está obligada a ofrecer y adelantaría los propósitos de la Ley de Telecomunicaciones. No debemos olvidar, como bien nos recuerda la Junta en su comparecencia ante nos, que por más de medio siglo la PRTC ha mantenido el control y monopolio telefónico de Puerto Rico y como parte de su poder, en ocasiones ha implementado tácticas dirigidas a mantener a sus competidores fuera del mercado o en desventaja, ocasionándoles daños y perjuicios.

Por ello, la imposición de daños podría ser apropiada, por ejemplo, en el caso de una persona a quien se le niegue caprichosamente servicio telefónico o en el caso de un competidor a quien la PRTC le niegue acceso a su sistema de manera injustificada. Limitar la capacidad de la Junta a meramente determinar la *legalidad* de las actuaciones de una compañía, sin permitirle adjudicar compensaciones económicas por los daños ocasionados, atentaría contra el propósito de la Ley de Telecomunicaciones de eliminar la conducta anticompetitiva y de proteger a los consumidores y supondría ignorar la intención legislativa de que fuera la Junta quien se encargara de ventilar las mismas.

**Igualmente, al ejercer la facultad de imponer daños, la Junta no sólo adelanta los intereses de su ley habilitadora, sino que evita que la persona afectada tenga que incurrir en los costos de un nuevo**

**procedimiento ante los tribunales para obtener un remedio <u>completo</u>. Nos parece evidente que, al amparo de la Ley de Telecomunicaciones, la Junta tiene la facultad de resolver la <u>totalidad</u> de la querella que se le presenta sobre asuntos de telecomunicaciones. Esto fue lo que pretendió el legislador. Sería sumamente oneroso que, ante una violación a la Ley de Telecomunicaciones, se le exija a la persona afectada acudir primero a la Junta y presentar toda su prueba ante dicha entidad para luego indicarle que si desea obtener un remedio <u>completo</u> deberá dirigirse a los tribunales para reclamar los daños.**

**A nuestro modo de ver, sería más apropiado que la Junta, que ya ha visto y pasado juicio sobre la prueba, haga la determinación de daños y no imponerle a la parte afectada la obligación de presentar toda la prueba otra vez ante un tribunal, con los gastos que esto implica. Además, debe tenerse presente que muchas de las violaciones a la Ley de Telecomunicaciones podrían involucrar consideraciones técnicas, propias de una agencia especializada. Por supuesto, siempre existirá el recurso de revisión judicial para garantizar el debido proceso de ley.**

Como bien admite la Junta en su comparecencia ante nos, con la presente acción la PRTC persigue crear más escollos en el camino de sus competidores o en el de los consumidores, dividiendo las querellas de telecomunicaciones en dos (2) acciones similares, una ante los tribunales de justicia (para recobrar daños) y otra ante la Junta. Con toda probabilidad, en ambas acciones los consumidores tendrán que presentar la misma prueba, con la consecuencia de que dicha bifurcación agotaría sus recursos económicos, los cuales probablemente serán muy limitados.

Esta bifurcación de la causa de acción, como indica la Junta, agotaría los recursos económicos de la competencia y los consumidores

y evitaría una solución adecuada y eficaz a tono con las exigencias de dicha legislación.  Por ello, privar a la Junta de la facultad para otorgar daños retrasaría los fines de la Ley de Telecomunicaciones, en tanto dificultaría abrir el mercado a la competencia.

Sin la facultad legal para que la Junta compense por daños, muchas compañías de telecomunicaciones no tendrían incentivo alguno para cumplir con la Ley de Telecomunicaciones en tanto las violaciones a dicha legislación representarían un beneficio económico mayor que cualquier multa que la Junta le pueda imponer.  Además, la compensación de daños ante un tribunal (la cual se produciría tras finalizar un primer procedimiento ante la Junta) sería lo suficientemente remota e incierta, (en tanto dependería de la frágil capacidad económica de los consumidores o de los competidores para costear un segundo proceso ante los tribunales), como para desincentivar el cumplimiento de la Ley de Telecomunicaciones.

En fin, por entender que la Junta tiene la facultad legal necesaria para entender en acciones de daños y perjuicios, confirmaríamos el dictamen del Tribunal de Circuito de Apelaciones.  En vista de que la Opinión del Tribunal llega a otra conclusión, respetuosamente disentimos.


**Federico Hernández Denton**
Juez Asociado