El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
Este recurso nos brinda la oportunidad, por un lado, de aclarar el alcance del Art. 13.1 de la Ley Núm. 161-2009, infra, a la luz de nuestras expresiones en Cordero et al. v. ARPe et al., 187 DPR 445 (2012), y por otro, de interpretar el término “residencia” establecido en la Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico, Ley Núm. 89-2000 (27 LPRA sec. 321 et seq.) (Ley Núm. 89-2000). Por los fundamentos expuestos a continuación, revocamos la determinación de la Junta Revisora de Permisos y Uso de Terrenos (Junta Revisora).
*657 I
El 16 de marzo de 2010, QMC Telecom, LLC (QMC) so-licitó un permiso de construcción de una torre de telecomu-nicación a la Administración de Reglamentos y Permisos (ARPe). La instalación de telecomunicaciones se construi-ría en el barrio Altosano del Municipio Autónomo de San Sebastián (Municipio). El 23 de marzo de 2010, una vez atendida la solicitud, ARPe cursó una “Notificación de aprobación de permiso de construcción certificado”. En dicha misiva se requirió el cumplimiento con ciertas condi-ciones para la expedición final del permiso, entre ellas, que el Municipio endosara el proyecto.
En julio de 2010, QMC presentó la evidencia requerida. Con relación al Municipio, sometió dos cartas. En una, el Municipio expresaba su endoso al proyecto, condicionado a que se cumplieran con todas las exigencias impuestas por la agencia y a que los vecinos no se opusieran. En la otra, de fecha posterior, el Municipio retiró su endoso a la cons-trucción, porque los vecinos cercanos se opusieron al refe-rido proyecto. Ante ello, QMC presentó una carta en la que argumentó que la Ley Núm. 89-2000 no requería el endoso del Municipio, por lo que reiteraba su solicitud de permiso de construcción.
Paralelamente, el 23 de marzo de 2010 el Sr. Víctor Rivera Pastrana presentó una querella ante ARPe. En ella consignó su oposición a la construcción de la instalación de telecomunicaciones. Ante esto, se celebró una vista admi-nistrativa en la que testificaron el señor Rivera Pastrana y la Sra. Zulma I. Figueroa Marti. Esta última se opuso a la solicitud de permiso porque la ubicación de la facilidad afectaría el valor de su propiedad y sus planes futuros, dado que parte de su propiedad se encontraba dentro del radio de seguridad. Por su parte, QMC presentó un “Radio Frequency Hazard Assessment”, un “Power Density Simu *658 lation” y una certificación del Ing. Roger R. Fraiters Ne-grón, en las cuales se indicó que las emisiones de la insta-lación de telecomunicaciones no excederían los límites máximos permitidos por la Comisión Federal de Comuni-caciones (FCC, por sus siglas en inglés). También presentó la declaración jurada del Ing. Axel Hernández Vázquez, quien certificó que se había notificado a todos los vecinos dentro de una distancia de cien metros de la construcción propuesta. Tras la celebración de la vista, 39 vecinos pre-sentaron a ARPe una carta expresando sus preocupaciones con la instalación de telecomunicaciones.
El 16 de noviembre de 2010, ARPe emitió una Resolu-ción mediante la cual desestimó la querella. Concluyó que QMC cumplió con toda la legislación y reglamentación aplicables. Señaló, además, que los vecinos no habían sus-tentado sus contenciones con evidencia, mientras que QMC presentó todos los documentos requeridos por la agencia. Por ello, el 14 de marzo de 2011 ARPe emitió el permiso de construcción a favor de QMC. No obstante, no notificó esta Resolución a la señora Figueroa Marti ni al Sr. José M. Crespo Morales.
En vista de lo anterior, estos últimos presentaron una querella en la Oficina del Inspector General de Permisos (OIGPe), agencia creada por la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 LPRA see. 9011 et seq. (Ley Núm. 161-2009). El 9 de agosto de 2011, la OIGP ordenó a la antigua ARPe, ahora Oficina de Gerencia y Permisos (OGP), a notificar la refe-rida Resolución. La OGP notificó nuevamente la Resolu-ción el 30 de septiembre de 2011.
Inconformes, los peticionarios presentaron un escrito de revisión administrativa ante la Junta Revisora. Alegaron la violación al debido proceso de ley y que parte de la pro-piedad de la señora Figueroa Marti —específicamente la terraza, unos columpios, una estructura de almacena- *659 miento de herramientas y una estructura de cultivos hi-dropónicos— se encontraba dentro del radio de seguridad. La OGP se opuso a la solicitud de revisión. Estando el re-curso pendiente ante su consideración, la Junta Revisora declaró “con lugar” una solicitud de intervención presen-tada por el Municipio y los hijos de la señora Figuera Marti. Tras la celebración de una vista, la Junta Revisora emitió una Resolución el 16 de febrero de 2013. En esta confirmó la expedición del permiso de construcción. Enten-dió que QMC había cumplido con los requisitos legales y reglamentarios que rigen la presentación, tramitación y evaluación de permisos.
Aún inconformes, el Municipio, el Alcalde, el señor Crespo Morales y la señora Figueroa Marti, por sí y en representación de sus hijos menores de edad, presentaron un recurso de certiorari ante nos. El 5 de junio de 2012 acordamos expedir para revisar únicamente el siguiente señalamiento de error: “Erró la Junta Revisora al confirmar el permiso de construcción a pesar de que se violan las distancias de seguridad vigentes en derecho”. Solicitud de certiorari, pág. 6.(1) Así las cosas, las partes presentaron sus alegatos, y la Junta Reglamentadora de Telecomunica-ciones, T-Mobile de Puerto Rico, LLC, PRTC/Claro, Open Mobile, Sprint, AT & T y la “Personal Communications Industry Association” comparecieron como amigos de la corte. Además, el 7 de mayo de 2013 celebramos una vista oral en donde surgió una controversia en torno a la jurisdicción de este Tribunal para atender la controversia en los méritos. Por lo tanto, solicitamos a las partes que presentaran sendos memorandos de derecho con sus posiciones al respecto. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.
*660 II
A. Jurisdicción
Según hemos reiterado en múltiples ocasiones, la jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. S.L.G. SoláMoreno v. Bengoa Becerra, 182 DPR 675, 682 (2011). Los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos concernientes a ella son privilegiados y deben atenderse en forma preferente. González v. Mayagüez Resort & Casino, 176 DPR 848, 856 (2009). Al tratarse de un asunto que incide sobre el poder del tribunal para adjudicar una controversia, la falta de jurisdicción se puede argumentar motu proprio, pues un tribunal no tiene discreción para asumir jurisdicción donde no la hay. Souffront v. A.A.A., 164 DPR 663, 674 (2005). Si un tribunal carece de jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Con este marco normativo, debemos evaluar la Ley Núm. 161-2009 para determinar si tenemos jurisdicción para atender el presente recurso.
La Ley Núm. 161-2009 se adoptó para establecer un procedimiento nuevo para la solicitud, evaluación y concesión de permisos de uso, construcción y desarrollo de terrenos en Puerto Rico. Exposición de Motivos Ley Núm. 161-2009 (2009 (Parte 2) Leyes de Puerto Rico 960). Esta ley derogó la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975 (23 LLPRA sec. 71 et seq.) (Ley Núm. 76-1975). Así pues, ARPe quedó reemplazada por la OGP como la agencia administrativa encargada de la concesión de permisos. 23 LPRAsec. 9012d. No obstante, el Art. 19.10 de la Ley Núm. 161-2009 (23 LPRA see. 9011 n.) dispuso que la Ley Núm. 76-1975 sería derogada “al año de entrar en vigor esta Ley”. Por su parte, a pesar de que la Ley Núm. 161-2009 entró en vigor inmediatamente, es decir, el 1 de diciembre *661 de 2009, su Art. 19.13 estableció un periodo de transición de un año:
Excepto por el Artículo 19.10 [...], todos los Artículos de esta Ley entrarán en vigor inmediatamente a partir de su aprobación. [...]
No obstante, habrá un periodo de transición de un (1) año contado a partir de la aprobación de esta Ley. El Gobernador, o la persona en quien él delegue, tendrá facultad para adoptar aquellas medidas transitorias y tomar las decisiones necesa-rias para que se efectúe la transferencia ordenada por esta Ley sin que se afecten los servicios ni la programación normal de las funciones transferidas. 23 LPRA see. 9011 n.
La Ley Núm. 161-2009 también alteró el procedimiento de revisión de las determinaciones de la Junta Revisora. Previo a su aprobación, el foro con jurisdicción para atender las revisiones de la Junta de Apelaciones sobre Construcciones y Lotificaciones era el Tribunal de Apelaciones de acuerdo con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 LPRA see. 2101 et seq. Luego de su aprobación, el foro con jurisdicción para atender las revisiones de la Junta Revisora era este Tribunal. 23 LPRA see. 9023. No obstante, nos vimos obligados a aclarar este particular dada la confusión generada por el lenguaje de la Ley Núm. 161-2009 y varias sentencias inconsistentes de varios paneles del Tribunal de Apelaciones.
A esos efectos, en Cordero et al. v. ARPe et al., supra, aclaramos que, al amparo del Art. 11.13 de la Ley Núm. 161-2009 (23 LPRA sec. 9021l), los casos pendientes de adjudicación ante la antigua Junta de Apelaciones, al momento de entrar en vigor la ley, se transferían a la Junta Revisora. Cordero et al. v. ARPe et al., supra, pág. 460. Ese foro resolvería la petición basado en la ley vigente al momento de la presentación de la solicitud. íd., pág. 460. Además, también expresamos que
[...] lo dispuesto en el Art. 13.1 de la Ley Núm. 161-2009, supra, en lo atinente a las revisiones de las determinaciones de *662 la Junta Revisora ante este Tribunal, aplica únicamente a ca-sos adjudicados por la Junta Revisora sobre solicitudes que fueron presentadas o adjudicadas por la OGPe a partir [del] 1 de diciembre de 2010 [...] (Énfasis suplido y en el original). Id., págs. 462-463.
Sin embargo, un análisis integral de la ley requiere que dejemos sin efecto esas expresiones. Veamos.
La Ley Núm. 161-2009 es consistente al disponer que los casos pendientes al momento de su aprobación se resolverán “al amparo de las disposiciones bajo las cuales se hubiesen iniciado” —(énfasis suplido) Art. 2.21 de la Ley Núm. 161-2009, supra, 23 LPRA sec. 9012t— “bajo las disposiciones de ley aplicables al momento de la presentación de dichas solicitudes” —(énfasis suplido) Art. 18.2 de la Ley Núm. 161-2009, supra, 23 LPRA sec. 9028a— y “al amparo de las disposiciones de las leyes y reglamentos vigentes al momento de la presentación de la solicitud de la autorización objeto de la revisión” —(énfasis suplido) Art. 11.13 de la Ley Núm. 161-2009, supra, 23 LPRA sec. 90211 — . Vemos, pues, que la ley es clara al establecer la fecha de presentación de la solicitud de permiso como el momento que determina cuál ley aplicará al proceso. Consecuentemente, la ley no menciona que aplicará a casos adjudicados luego de su vigencia. Por otro lado, la Ley Núm. 161-2009 es clara al establecer que sus disposiciones aplicarán a los casos iniciados luego de su fecha de vigencia. Esta ley entró en vigor el 1 de diciembre de 2009, no el 1 de diciembre de 2010. Por lo anterior, dejamos sin efecto nuestras expresiones relativas a que poseemos jurisdicción para revisar los casos sobre solicitudes “adjudicadas por la OGPe a partir [del] 1 de diciembre de 2010 [...]”. (Énfasis suplido y en el original). Cordero et al. v. ARPe et al., supra, pág. 463.
Por lo tanto, el Art. 13.1 de la Ley Núm. 161-2009, supra, 23 LPRA see. 9023 —que designa a este Tribunal como el foro con jurisdicción para revisar las determinado *663 nes de la Junta Revisora— aplica a todos los casos relacionados con solicitudes presentadas después de la vigencia de la ley, es decir, el 1 de diciembre de 2009. (2)
En el caso de epígrafe, la solicitud de permiso de cons-trucción fue presentada el 16 de marzo de 2010, es decir, tres meses después de la fecha de vigencia de la Ley Núm. 161-2009. Por tal razón, nos debemos regir por sus disposiciones. Consiguientemente, de acuerdo con el Art. 13.1 de la ley, supra, esta Alta Curia es el foro con jurisdic-ción para revisar el dictamen recurrido.
Concluido que somos el foro con jurisdicción para aten-der el recurso de certiorari, pasemos a examinar la contro-versia en sus méritos.
B. Ley Federal de Telecomunicaciones
La Ley Federal de Telecomunicaciones, 47 USCA see. 151 et seq., se adoptó para regular la prestación de servicios de telecomunicaciones y para crear la Federal Communications Commission (FCC). Esta ley establece un régimen de desregulación dirigido a eliminar las barreras de competencia en el campo de las telecomunicaciones y así abrir el mercado a la libre competencia. íd. Además, el estatuto eliminó todas las franquicias de monopolios de las compañías locales, impuso obligaciones a los acarreadores de servicios telefónicos y prohibió a los acarreadores locales establecer condiciones discriminatorias o prohibir la reventa de los servicios de telecomunicaciones. Íd. Véase, además, Caribe Comms., Inc. v. P.R.T.Co., 157 DPR 203, 216 (2002).
Esta ley ocupó el campo con relación a los posibles efec-tos ambientales y de salud asociados con la construcción, la instalación y el uso de torres de servicios móviles. 47 USCA sec. 332(c)(7). En específico, se dispuso que ningún *664 estado puede denegar un permiso para la construcción de una facilidad de telecomunicaciones siempre y cuando se cumpla con la reglamentación promulgada por la FCC. Id. No obstante, este mismo articulado reconoce un área limi-tada que los estados pueden regular:

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
(I) shall not unreasonably discriminate among providers of functionally equivalent services; and
(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission’s regulations concerning such emissions. 47 USCA sec. 332(c)(7).
Como surge de esta sección, los estados pueden —de forma limitada— regular la ubicación, construcción y mo-dificación de torres de servicios móviles. No obstante, de-ben velar por que este tipo de regulación no discrimine entre proveedores de servicios de telecomunicaciones que *665 brinden servicios funcionalmente similares ni prohíba, o tenga el efecto de prohibir, el acceso a servicios inalámbri-cos personales. Id.
C. Ley de Telecomunicaciones de Puerto Rico y Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico
La Asamblea Legislativa aprobó la Ley de Telecomunicaciones de Puerto Rico de 1996, Ley Núm. 213-1996 (27 LPRA sec. 265 et seq.) (Ley Núm. 213-1996), como contraparte estatal a la Ley Federal de Telecomunicaciones. La ley se adoptó para promover la competencia total, igual y leal entre las compañías que forman parte de ese mercado. Exposición de Motivos de la Ley Núm. 213-1996 (1996 (Parte 2) Leyes de Puerto Rico 1162). Además, busca asegurar acceso a mejores y más variados servicios de telecomunicaciones a costos razonables. Íd. Véase, además, Claro TV y Junta Regl. Tel. v. OneLink, 179 DPR 177, 188-193 (2010).
Específicamente, se estableció como política pública en el área de las telecomunicaciones, entre otros propósitos, los siguientes: reconocer que el servicio de telecomunicaciones persigue un interés público dentro de un mercado competitivo; proveer servicio universal a un costo justo, razonable y asequible para todos los ciudadanos; asegurar un amplio número de posibilidades competitivas en la oferta de servicios y facilidades de telecomunicaciones; promover la competencia y utilizar las fuerzas del mercado como factor primordial en la determinación de precios, términos, disponibilidad y condiciones de servicios; asegurar que no existan barreras reglamentarias ni procedimientos administrativos innecesarios que entorpezcan la competencia en el mercado; simplificar el proceso reglamentario en aquellas situaciones en las que la reglamentación sea necesaria y dirigir la reglamentación para el bienestar del consumi-dor■; penalizar las prácticas anticompetitivas en el mercado *666 de telecomunicaciones; desempeñar la función de guardián del ambiente competitivo, y proveer servicios de telecomu-nicaciones a todos los consumidores del país, incluyendo aquellos que tienen bajos ingresos o residen en áreas rura-les o en áreas en que sea costosa la instalación de estos servicios. 27 LPRA sec. 265.
Por otro lado, y basado en la autoridad reservada a los estados en la Ley Federal de Telecomunicaciones, 47 USCA sec. 332(c)(7), se aprobó la Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico, Ley Núm. 89-2000, supra. Mediante esta ley se busca regular la construcción de las referidas torres y, a su vez, proteger la seguridad y los derechos de los ciudadanos, estableciendo un balance entre ambos intereses. Exposición de Motivos de la Ley Núm. 89-2000 (2000 (Parte 1) Leyes de Puerto Rico 696). A tono con este fin, se estableció como política pública la ubicación de antenas de telecomunicaciones en una misma facilidad y la armonización de las necesidades de cobertura de las empresas de telecomunicaciones con los intereses de la ciudadanía. Íd.
Según el Art. 3(c) de la Ley Núm. 89-2000, supra, “[l]a proliferación de torres que albergan antenas en zonas urbanas o en las cercanías de residencias crea desasosiego y temor por la seguridad y vida de dichos titulares y requiere de legislación que armonice los intereses comerciales con el de los ciudadanos de modo que se logre una convivencia sana y una mejor calidad de vida”. 27 LPRA see. 321 n. Así pues, la Ley Núm. 89-2000 establece una serie de requisitos previo al otorgamiento de permisos de construcción de facilidades de telecomunicaciones. En síntesis, hay exigencias de notificación a vecinos o colindantes, nor-mas en torno a la coubicación de las antenas y, de especial importancia para el caso de autos, requisitos de distancia entre las torres y las residencias aledañas. Véase 27 LPRA *667 sees. 323-325. Con relación a esto último, la ley dispone lo siguiente:
(a) Excepto como más adelante se dispone la construcción de toda torre de telecomunicaciones en un distrito residencial o rural, según las clasificaciones de la Junta de Planificación o de los municipios autónomos autorizados a emitir dichas cla-sificaciones, por la Junta de Planificación conforme a las sees. 4001 et seq. del Título 21, conocidas como “Ley de Municipios Autónomos”, deberá guardar una distancia no menor de la altura de la torre, más un diez por ciento (10%) adicional de la residencia más cercana. Este requisito no será de aplicación si el incumplimiento con las disposiciones de este capítulo no fue creado por el dueño de la torre y sí por desarrollos posteriores autorizados por la Junta de Planificación, en cuyo caso la torre podrá permanecer en su ubicación original. Se permitirá la ubicación de una torre que no cumpla con lo establecido en este inciso en aquellos casos donde el dueño de la torre y la residencia más cercana sea un mismo titular o, aún siendo dueños distintos, el titular de la residencia permita por decla-ración jurada la ubicación de la torre en el lugar propuesto siempre que no haya otra residencia existente] dentro del radio de distancia dispuesto por este capítulo que no haya con-sentido dicha ubicación mediante declaración jurada. (Enfasis suplido). 27 LPRA sec. 323(a).
Además de la Ley Núm. 89-2000, la Junta de Planificación (JP) adoptó el Reglamento para Proyectos de Construcción, Instalación y Ubicación de Torres y Facilidades de Telecomunicaciones, Reglamento de Planificación Núm. 26 de la Junta de Planificación de 19 de noviembre de 2003 (Reglamento Núm. 26), reglamento vigente a la fecha de la solicitud del permiso en controversia. Este perseguía principios análogos a la Ley Núm. 89-2000. En cuanto al radio de seguridad, el Reglamento Núm. 26 disponía que
[l]as torres de telecomunicaciones podrán permitirse dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico cumpliendo con las siguientes disposiciones:
1. Distancia de la Residencia Más Cercana — La torre deberá guardar una distancia no menor de la altura de la torre más *668 un diez por ciento (10%) adicional medidos desde la residencia más cercana. Reglamento Núm. 26, supra, Sec. 3.02, pág. 12.
No obstante, y según señalado anteriormente, ninguna de estas disposiciones legales defíne expresamente el término “residencia”.(3)
D. Principios de hermenéutica
En ausencia de una definición del término “residencia” en la Ley Núm. 89-2000 y en el Reglamento Núm. 26, es necesario recurrir a los principios de hermenéutica prevalecientes en nuestro ordenamiento jurídico. Es norma reiterada que todas las leyes, aunque sean claras, requieren interpretación. Otero de Ramos v. Srio. de Hacienda, 156 DPR 876, 883-884 (2002). Cuando el lenguaje de una ley es claro, el texto es la expresión por excelencia de la intención legislativa. íd., pág. 900. Por ello, al analizar una ley se debe acudir primero al propio texto, pues si el lenguaje es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir con su espíritu. Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14.
No obstante, la interpretación de una ley no puede ser únicamente literal ni únicamente lógica, sino ambas a la vez. Sucn. Álvarez v. Srio. de Justicia, 150 DPR 252, 275-276 (2000). Se debe rechazar cualquier interpretación que conduzca a resultados absurdos. Id. Además, la interpretación correcta de una ley requiere el estudio y análisis del texto íntegro, pues la lectura aislada y desconectada puede crear confusión. Sánchez Díaz et al. v. E.L.A., 181 DPR 810, 822-823 (2011).
*669 De surgir alguna ambigüedad en el texto del estatuto, el tribunal debe asegurarse que la interpretación cumple con los propósitos legislativos. Morales et als. v. Marengo et al., 181 DPR 852, 859 (2011). Así pues, al interpretar una disposición específica de una ley, los tribunales deben considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y la interpretación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. J.P. v. Frente Unido I, 165 DPR 445, 472 (2005).
Por otra parte, según el Art. 15 del Código Civil de Puerto Rico, 31 LPRA sec. 15, las palabras de una ley deben ser entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales sino al uso general y popular de las voces. Véase, además, Sucn. Toro v. Sucn. Toro, 161 DPR 391, 402 (2004). Si el estatuto no contiene una definición del término en controversia, este debe entenderse en el sentido ordinario y usual que se le adscribe, tomando en consideración que la interpretación judicial debe hacerse con fines socialmente útiles. Sánchez Díaz et al. v. E.L.A., supra, pág. 825. Cuando en el estatuto los términos son claros y susceptibles de una interpretación incuestionable, según el significado común de sus palabras y de su construcción gramatical, los tribunales no deben intercalar palabras ni suplir omisiones al interpretarlo. Irizarry v. J & J Cons. Prods. Co., Inc., 150 DPR 155, 165 (2000).
III
En el caso ante nuestra consideración, la Junta Revi-sora determinó que el 56.6% de la propiedad de la señora Figueroa Marti se encuentra dentro del radio de seguridad establecido en la Ley Núm. 89-2000. Además, quedó pro-bado que dentro del referido radio se encuentra: (1) parte de la terraza no techada, pero adherida a la residencia; (2) *670 unos cultivos hidropónicos; (3) un área de juegos utilizados por los hijos de la señora Figueroa Marti que contiene un columpio y un trampolín, y (4) una estructura para el al-macenamiento de herramientas.
No obstante, la Junta Revisora confirmó la autorización emitida por ARPe a QMC para la construcción de la facili-dad de telecomunicaciones. Para poder otorgar el permiso, tanto ARPe como la Junta Revisora determinaron que el radio de seguridad debía tomar en cuenta únicamente las paredes de la casa, sin incluir la terraza, el área de juegos, la estructura de almacenamiento ni el cultivo hidropónico. Esa misma interpretación es la que nos invita a adoptar QMC. Sin embargo, esta interpretación no se sostiene tras un análisis del historial legislativo de la Ley Núm. 89-2000 de acuerdo con los principios de hermenéutica que rigen en nuestro ordenamiento. Veamos.
Surge de la Exposición de Motivos de la Ley Núm. 89-2000 que
[n]o se puede limitar ni menoscabar el reclamo de personas y comunidades sobre la seguridad de sus propiedades y su salud personal por condiciones reglamentarias creadas por el propio Gobierno. [...]
Durante la emergencia ocurrida en el país con motivo del paso del Huracán Georges el pasado 21 de septiembre de 1998, tuvimos la experiencia en distintos lugares de Puerto Rico de torres que colapsaron debido a las fuerzas de los vientos hu-racanados que azotaron a nuestra isla. Hasta el momento no ha ocurrido ninguna desgracia en la que se vean afectadas las vidas de las personas aunque el peligro siempre estará latente mientras una torre esté ubicada dentro del radio de una residencia. Esta Ley tiene como finalidad regular la construcción de las referidas torres y ala vez proteger la seguridad de nuestros ciudadanos.

........

[...] El único propósito de esta Ley es establecer un balance entre los intereses de nuestros ciudadanos y el desarrollo de nuestras áreas residenciales. La preocupación de la ciudadanía con relación a sus propiedades y seguridad es una genuina que amerita la más pronta atención de esta Asamblea Legislativa. (Enfasis suplido). 2000 (Parte 1) Leyes de Puerto *671 Rico 698-699.
Es decir, la Asamblea Legislativa reconoció expresa-mente el reclamo legítimo de los individuos y las comuni-dades sobre su seguridad y la de sus propiedades y residencias. Ahora bien, al imponer el requisito del radio de seguridad se utilizó la palabra “residencia” en vez de “propiedad” o “colindancia”.
Por ello, para determinar a qué se circunscribe el término “residencia” para efectos de la Ley Núm. 89-2000 debemos regirnos por los principios de hermenéutica y buscar el significado más corriente y usual, atendiendo al uso general y popular de las voces. A esos efectos, el Diccionario de la Real Academia Española define la palabra residencia, en lo pertinente, como el “[l]ugar en que se reside. [...] Casa en que se vive [...]”.(4) (Énfasis suplido). Es decir, residencia es lo que popularmente conocemos como casa u hogar. A su vez, casa se define como “[e] difirió para habitar”.(5) Por su parte, “terraza” se define como “[s]itio abierto de una casa desde el cual se puede explayar la vista”. (Énfasis suplido).(6) Así pues, resulta forzoso reconocer que la terraza, es decir, la construcción de la casa ex-puesta al exterior, independientemente de que esté techada o no, está comprendida bajo el concepto “residencia” de la Ley Núm. 89-2000. Dado que en el caso de epígrafe, parte de la terraza de la señora Figueroa Marti se encuentra dentro del radio de seguridad y que ello es suficiente para revocar el permiso en cuestión, no es necesario expresarnos sobre las estructuras accesorias.
Ciertamente, no podemos pasar por alto que la Ley Núm. 89-2000 busca armonizar los reclamos de los ciuda- *672 danos con la necesidad de contar con los avances tecnoló-gicos que proveen las telecomunicaciones, ambos intereses legítimos. Por esto, es preciso aclarar que el término resi-dencia incluye la terraza, siempre y cuando se encuentre construida o en proceso de construcción al momento de la solicitud del permiso de edificación de la facilidad de telecomunicaciones. Así evitamos que, con el único propó-sito de impedir la instalación de una facilidad de telecomu-nicaciones que cumpla con el requisito del radio de seguri-dad, se realicen desarrollos posteriores a la residencia que tengan como consecuencia colocar la torre dentro del radio seguridad.
IV
En vista de que la terraza de la señora Figuera Marti es parte de su residencia para fines de la Ley Núm. 89-2000 y que la Junta Revisora determinó que parte de la residencia se encuentra dentro del radio de seguridad, se revoca la determinación de la Junta Revisora. Consecuentemente, se revoca la expedición del permiso de construcción de la fa-cilidad de telecomunicaciones solicitado por QMC por no cumplir con la disposición sobre el radio de seguridad de la Ley Núm. 89-2000.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Kolthoff Caraballo emitió una opinión disidente, a la cual se unen los Jueces Asociados Señores Rivera García y Feliberti Cintrón. El Juez Aso-ciado Señor Martínez Torres y la Jueza Asociada Señora Pabón Charneco no intervienen.

 Las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez, y el Juez Asociado Señor Estrella Martínez hubieran atendido los señalamientos de error adicionales.

 No es necesario.expresarnos sobre la enmienda introducida por el Art. 7 de la Ley Núm. 18-2013 al Art. 13.1 de la Ley Núm. 161-2009 (23 LPRA sec. 9023) por no estar en controversia en este caso.

 El Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos, Reglamento de Planificación Núm. 31 de la Junta de Planificación de 30 de noviembre de 2010 (Reglamento Núm. 31), derogó el Reglamento para Proyectos de Construcción, Instalación y Ubicación de Torres y Facilidades de Telecomunicaciones, Reglamento de Planificación Núm. 26 de la Junta de Planificación de 19 de noviembre de 2003 (Reglamento Núm. 26). El Capítulo 44 del Reglamento Núm. 31, sobre Proyectos de Construcción, Instalación y Ubicación de Torres y Facilidades de Telecomunicaciones, tampoco define el término residencia.

 Diccionario de la Lengua Española, en: http://lema.rae.es/drae/?val=residencia (última visita, 29 de enero de 2014).

 Diccionario de la Lengua Española, en: http://lema.rae.es/drae/?val=asa (úl-tima visita, 29 de enero de 2014).

 Diccionario de la Lengua Española, en: http://lema.rae.es/drae/?val=terraza (última visita, 20 de noviembre de2013).