Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **CHRISTIAN BILINGUAL ACADEMY, INC.**<br><br>Parte Recurrente<br><br>v.<br><br>**SECRETARIA AUXILIAR DE POLITICA CONTRIBUTIVA**<br><br>Parte Recurrida | KLRA202400103 | **REVISIÓN ADMINISTRATIVA** Procedente de la Oficina de Procedimiento Adjudicativo Departamento de Hacienda<br><br>CASO: **2018-EC-003**<br><br>Sobre: **Solicitud de Exención Contributiva** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece ante nos Christian Bilingual Academy, en adelante, la parte recurrente o la Academia, mediante el presente recurso de epígrafe para solicitarnos que revisemos la *"Resolución"* del 30 de enero de 2024 emitida por la Oficina de Procedimiento Adjudicativo del Departamento de Hacienda, en adelante, Hacienda o la Agencia. En dicha *"Resolución",* Hacienda confirmó la determinación de la Secretaría Auxiliar de Política Contributiva, en adelante, SAPC, denegándole a la recurrente la exención contributiva de las Organizaciones Sin Fines de Lucro.

Por los fundamentos que expondremos a continuación, *confirmamos la "Resolución" recurrida.*

**I.**

La situación de hechos que nos ocupa es la siguiente.

El 3 de febrero de 2017, la Academia, la cual es una organización registrada en el Departamento de Estado con número de registro 353495, presentó una *solicitud de exención contributiva* bajo las disposiciones de la Sección 1101.01 de la Ley Núm. 1 del 31 de enero de 2011, mejor conocido como el Código de Rentas Internas.[1] Fundamentó su solicitud arguyendo que la misma era una corporación sin fines de lucro, según inscrita, con los propósitos exentos de educación -cristiana y académica- para los niveles elemental, intermedio y superior.[2] Por esos mismos fundamentos, la solicitud fue evaluada bajo las disposiciones de la Sección 1101.01 (a)(2)(D), sección que cobija las organizaciones educativas sin fines lucrativos que mantengan, en el curso ordinario de sus operaciones, una facultad, un currículo establecido y una matrícula de alumnado o estudiantado que asista regularmente a un local de actividades educativas.[3]

El 1 de diciembre de 2017, la SAPC le envió una correspondencia en respuesta a Ignacio Sánchez Guzmán, en adelante, Sánchez Guzmán, quien es el propietario de la Academia.[4] En la misma, se le informó que la Academia *no cualificaba* por no contar con requisitos para ser una corporación exenta bajo las disposiciones del Código de Rentas Internas.[5] Arguyó la SAPC que la recurrente **estaba organizada bajo operaciones que constituían un negocio para sus miembros y, por lo tanto, operaban para beneficios privados**.[6] **Añadió que tampoco**

---

[1] Apéndice del Recurso, pág. 13.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

***cumple con las disposiciones de la sección 1101.01 (d)(2) de la Ley.***[7]

El 4 de mayo de 2018, la SAPC recibió copia de la *"Querella"* presentada por la Academia, cuestionando la decisión tomada por la agencia en cuanto a la denegatoria de la concesión de la exención contributiva.[8]

Luego de una prórroga, la SAPC presentó un escrito titulado *"Contestación a la Querella"*, el 21 de junio de 2018.[9] En esta expusieron que durante el proceso de investigación para la concesión de la exención contributiva encontraron que la recurrente opera bajo licencia A-37-01, emitida por el Consejo de Educación de Puerto Rico.[10] Esa licencia había sido otorgada, originalmente, a Fajardo Christian School, Inc.[11]

Añade la SAPC en su informe que, la Fajardo Christian School, había solicitado en el año 2012 otra solicitud de exención contributiva como entidad sin fines de lucro.[12] Esta fue denegada en el año 2013 bajo el fundamento de que la organización constituía un negocio para Sánchez Guzmán y su esposa Milagros Velázquez Piñero, presidente y vicepresidente de la organización, respectivamente.[13] En aquel momento, Fajardo Christian School presentó de igual forma una querella, resuelta *"No Ha lugar"* y, eventualmente, fue en alzada al foro apelativo.[14] En su dictamen, el Tribunal de Apelaciones confirmó la decisión de la SAPC.[15] Esbozaron que para exentar a una organización bajo este estatuto es fundamental que ***"no esté organizada u operada para el***

---

[7] *Id.* pág. 13.
[8] Apéndice del recurso, pág. 17.
[9] *Id.* págs. 17-21.
[10] *Id.* pág. 18.
[11] *Id.*
[12] *Id.* pág. 19.
[13] *Id.*
[14] KLRA201500062, Sentencia del Tribunal de Apelaciones del 26 de marzo de 2015.
[15] *Id.*

*beneficio de intereses privados tales como individuos particulares, sus familiares, accionistas o personas bajo el control directo o indirecto por dichos intereses privados"*.[16] Además, con relación al señalamiento de error que hiciera la Academia, como también nos plantea en el recurso que nos ocupa, acerca de *la falta de notificación adecuada sobre los fundamentos de la determinación*, el Tribunal de Apelaciones aseguró que no le asistía la razón.[17] Esto último, toda vez que la misma fue enmendada, y la Academia así conoció las razones de la denegatoria.[18] Por lo tanto, procedió a confirmar la determinación de la Agencia.[19]

Con relación al caso de marras, luego de presentados los escritos de ambas partes, la Agencia procedió a citar una vista administrativa para el día 8 de junio de 2018.[20] Con la comparecencia de ambas partes, la aquí recurrente planteó ante el Oficial Examinador que la notificación de la denegatoria era deficiente al no notificar los hechos en los que se fundamentaba.[21]

Por su parte, SAPC, ripostó que con la "*Contestación a la Querella*" indicó de manera específica las partes en donde se encontraban las razones y disposiciones legales en las que se basó para denegar.[22] Ante esto, la parte recurrente aseguró no haber recibido tal escrito.[23] Por ello, la Agencia procedió a entregarle el escrito, y le concedió un receso para que lo examinara.[24] La

---

[16] KLRA201500062, Sentencia del Tribunal de Apelaciones del 26 de marzo de 2015.
[17] KLRA201500062, Sentencia del Tribunal de Apelaciones del 26 de marzo de 2015.
[18] *Id.*
[19] *Id.*
[20] Apéndice del recurso, pág. 1.
[21] *Id.*
[22] *Id.* pág. 2. (Véase, además, las págs. 14-15 del apéndice del recurso, donde la Agencia especifica los fundamentos de su determinación, en su carta denegatoria. Estas se encuentran en la página 14 en su último párrafo, y en la página 15 en su primer párrafo).
[23] *Id.*
[24] *Id.*

representación legal de la recurrente sostuvo su postura, alegando que mediante el documento se intentaba subsanar una deficiencia en la notificación de la denegatoria.[25]

Sin embargo, la Agencia ordenó la continuación de la vista administrativa, por lo que la recurrente solicitó que se reseñalara la misma para poder presentar testimonios de terceras personas.[26] A consecuencia de esa solicitud, la Agencia da por culminada la vista y la recalendarizó para el 5 de octubre de 2023.[27]

El 2 de octubre de 2023 el recurrente presenta una "*Moción Solicitando Suspensión de Vista del 5 de octubre de 2023 hasta tanto se Exprese el Secretario de Hacienda Referente a Solicitud Bajo la Sección 1101.01 (h)*".[28] Con esta moción, el querellante, buscaba que Hacienda le concediera la exención contributiva, toda vez que contaba con el reconocimiento de organización sin fines de lucro, bajo la Sección 501(c)(3) del Código Federal de Rentas Internas, 26 USCA sec. 501(c)(3).[29] A interpretación del recurrente, bajo la Sec. 1101.01(h) del Código de Rentas Internas, le corresponde al Secretario de Hacienda determinar la concesión de la exención contributiva para organizaciones sin fines de lucro a entidades o corporaciones reconocidas como 501(c)(3).[30]

El 13 de octubre de 2023, SAPC, mediante escrito titulado "*Contestación a Orden*", acredita el recibo de dicha carta y reafirma que (1) la parte recurrente no cumplía con el requisito al momento de emitir la determinación; (2) que la enmienda fue incorporada en el año 2020 y; (3) que dicha sección 1101.01(h) del código, no obliga a la agencia a conceder la exención.[31]

---

[25] *Id*. pág. 2.
[26] Apéndice del recurso, pág. 2.
[27] *Id*.
[28] *Id*. pág. 35.
[29] *Id*.
[30] *Id*.
[31] *Id*. pág. 41.

Ante este escenario, la Agencia señala la vista administrativa para el 5 de diciembre de 2023 a la 1:30 de la tarde.[32] El 2 de noviembre de 2023, el recurrente presenta otro escrito titulado "*Moción Solicitando Suspensión de la Vista del 5 de diciembre de 2023 hasta tanto se Exprese el Secretario de Hacienda Referente a la Solicitud Bajo la Sección 1101.01(h)*".[33] Esta vez, la parte recurrente, argumentó que la SAPC no tenía la facultad para "usurpar las funciones del Secretario de Hacienda".[34]

En la vista, SAPC sostuvo la facultad discrecional de Hacienda y la no obligatoriedad para conceder la exención.[35] También atendió el argumento del querellante sobre que era solo el Secretario quién debía responder la carta. SAPC indicó que dicha carta se le delegó por la Oficina del Secretario, el 3 de octubre de 2023, para tomar una determinación.[36] En vista de esto, la determinación original quedó sometida para la consideración de la Agencia, la cual mediante *"Resolución"* del 30 de enero de 2024 determinó "No Ha Lugar" y confirmó la determinación de SAPC estableciendo las siguientes determinaciones de hechos:[37]

(1) La parte Querellante se registró en el Departamento de Estado el 7 de mayo de 2015, como una corporación sin fines de lucro, bajo el número 3534495, con el propósito de establecer:
*"un colegio sin fines de lucro, creado para responder a las urgencias de unos servicios educativos que respondan a la formación de carácter ético y cristiano de niños y jóvenes en la búsqueda de conocimientos académicos a través de análisis e investigación."*

(2) La parte Querellante se dedica a la operación (sic) ofrecer educación cristiana y académica a nivel elemental, intermedio y superior.

---

[32] *Id.* pág. 43.
[33] Apéndice del recurso, pág. 43.
[34] *Id.* págs. 3, 43-44.
[35] *Id.* pág. 3.
[36] *Id.* pág. 3.
[37] *Id.* pág. 4.

(3) La Junta de Directores de la parte Querellante está compuesta por el Sr. Ignacio Sánchez Guzmán (Presidente), Sra. Lydia Reyes Guzmán (Vice-Presidenta), y la Sra. Milagros Piñeiro (Tesorera).

(4) La parte Querellante lleva a cabo sus operaciones en unas facilidades localizadas en el Bo. Juan Martin Carr #3 k.m. 2.8, en el Municipio de Luquillo, Puerto Rico. Dichas facilidades pertenecen al señor Ignacio Sánchez Guzmán.

(5) Tanto la propiedad mueble como inmueble utilizado por el Colegio en sus operaciones está bajo un contrato de arrendamiento con el señor Ignacio Sánchez Guzmán. El canon de arrendamiento mensual es de $2,400, bajo un acuerdo verbal de arrendamiento.

(6) Los estados financieros de la parte Querellante de ingresos y gastos proyectados para los primeros cuatro años contributivos denotan que la partida de renta va en aumento para el año 2017, a $37,251; y a $77,321 para los años 2018 al 2020. Otra partida que aumenta es la partida de reparaciones y mantenimiento.

Inconforme con la determinación de la Agencia, el recurrente acude ante nos mediante un recurso de *"Revisión Judicial"* haciendo los siguientes señalamientos de error:

**PRIMERO**: ERRÓ EL DEPARTAMENTO DE HACIENDA A TRAVÉS DE LA SECRETARÍA AUXILIAR DE POLÍTICA CONTRIBUTIVA AL REALIZAR UNA DEFECTUOSA NOTIFICACIÓN AL RECURRENTE MEDIANTE CARTA DEL 1 DE DICIEMBRE DE 2017 DONDE NUNCA EXPONE NINGÚN HECHO EN EL CUAL DESCANSARA PARA DENEGAR TAL SOLICITUD.

**SEGUNDO**: ERRÓ EL OFICIAL EXAMINADOR Y, POR ENDE, HACIENDA, A TRAVÉS DE LA SECRETARÍA AUXILIAR DE POLÍTICA CONTRIBUTIVA, AL EXCEDERSE EN SUS FACULTADES, NO PERMITIENDO QUE EL SECRETARIO DE HACIENDA ATENDIERA LA SOLICITUD QUE SE LE FORMULARA MEDIANTE CARTA DEL 19 DE ENERO DE 2021, AL HABÉRSELE NOTIFICADO QUE EL IRS HABÍA CONCEDIDO TAL SOLICITUD.

La parte recurrida compareció el 22 de abril de 2024 mediante escrito titulado *"Escrito en Cumplimiento de Resolución".* Con el

beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

### A. Revisiones Judiciales

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Id. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, seccs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra*,* pág. 89;

*Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Otero v. Toyota,* 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *OEG v. Martínez Giraud, supra, pág. 89*; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM*, supra, pág. 175.

Sin embargo, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *Mun. de San Juan v. CRIM*, supra, pág. 175. En consecuencia, la deferencia cede cuando:

(1) la decisión no está basada en evidencia sustancial;

(2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;

(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o

(4) la actuación administrativa lesiona derechos constitucionales fundamentales.

Id.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. LPAUG, supra, sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Id.

En resumen, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción.

### B. Facultad de la Agencia y del Secretario

El Derecho Administrativo regula los trámites, los poderes y las responsabilidades de las agencias administrativas, las exigencias legales para efectuar tales acciones y los remedios que tienen disponibles las partes afectadas por la actuación de una agencia. *R&B Power. Inc. v. Junta de Subasta ASG*, 2024 TSPR 24, 213 DPR ____ (2024); *Autoridad de Carretera v. Programa de Solidaridad UTIER*, 210 DPR 897, 907 (2022) (citando a J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4ta ed.

rev., San Juan, Ed. Situm, 2017, pág. 17). Como muy bien sugiere esta definición, la médula de esta materia jurídica se basa en el proceder de las agencias que están adscritas al Poder Ejecutivo. La creación de estas entidades denominadas 'agencias administrativas' surgió de la necesidad de "generar un conocimiento especializado para establecer la forma y manera de atender las necesidades de una sociedad cada día más amplia y más compleja". J. Echevarría Vargas, supra, pág. 3.

La Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. De esta forma, tradicionalmente, la Asamblea Legislativa ha delegado a las agencias administrativas adscritas al Poder Ejecutivo una serie de facultades, ya sea a través de la ley orgánica de la agencia o a través de leyes especiales. *R&B Power. Inc. v. Junta de Subasta ASG*, supra; *FCPR v. ELA*, 211 DPR 521, 535 (2023).

Dentro de ese marco de delegación, las agencias administrativas gozan de dos poderes esenciales: el poder de reglamentar el ejercicio de funciones cuasi-legislativas y el poder de adjudicar controversias al ejercer funciones cuasi-judiciales dentro de la pericia de la agencia. *Caribe Comms., Inc. v. PRTC*, 157 DPR 203, 211 (2002).

Por su parte, es importante señalar que la LPAUG, en su Sección 3.1, sec. 9641 dispone lo siguiente:

> [...] Los procedimientos relativos a los asuntos y actuaciones del Secretario de Hacienda con respecto a las leyes de rentas internas del Gobierno de Puerto Rico se regirán por las siguientes normas:
>> (1) Un funcionario designado por el Secretario de Hacienda realizará una determinación preliminar;
>> (2) el contribuyente no conforme con la determinación preliminar solicitará una vista informal que presidirá un funcionario distinto al que realizó la determinación

preliminar. Este realizará la determinación final por delegación del Secretario de Hacienda.

Por otro lado, en el Artículo 3(j) de la Ley Número 3 del 22 de junio de 1994, mejor conocida como Plan de Reorganización del Departamento de Hacienda, 3 LPRA Ap. VII, sec. II, establece que, entre las facultades del Secretario de Hacienda, se encuentra:

> "Delegar en funcionarios o empleados del Departamento de Hacienda, incluyendo los organismos que constituyen componentes administrativos del mismo, cualesquiera poderes, facultades, deberes o funciones que le hayan sido conferidos, excepto la facultad de adoptar o aprobar reglamentos, así como cualquier otra facultad que sea indelegable por mandato de ley".

### C. Organizaciones Sin Fines de Lucro (tercer sector)

Como regla general, las sociedades organizadas se dividen en dos sectores, el público y el privado. El elemento esencial del sector público es que el control final de las operaciones lo ejercen representantes electos -directa o indirectamente- por el pueblo. Por otro lado, el sector privado es el formado por individuos y que comprende actividades con ánimos de lucro. Al primer sector lo componen los funcionarios o servidores públicos, mientras al segundo lo relacionamos tradicionalmente con los empresarios y las personas que laboran para estos.[38]

Ahora bien, en sociedades complejas y desarrolladas como las que vivimos, resultan existir otros grupos y gestores que no pueden ser catalogados bajo ninguno de estos sectores. Personas motivadas por gestiones con inquietudes religiosas, solidarias, cívicas o incluso políticas. Es aquí donde entra *el tercer sector,* que junta peculiaridades de los principales sectores antes mencionados.

---

[38] C. Díaz Olivo, *Sin Fines de Lucro: Normativa Jurídica del Tercer Sector,* 2da ed. Editorial AmaForte, 2016, págs. 14-15.

Hablamos, pues, de promotores de gestiones sociales y alto interés público que no persiguen como fin el lucro, pero que tampoco forman parte de la gestión gubernamental.[39]

Los grupos que pueden componer este sector son tan diversos que, por lo general, habría que identificarles por descarte o exclusión. Es decir, a manera de ejemplo sencillo, si no es gubernamental ni tiene fines lucrativos, es relativa al tercer sector. Estos, por lo general, se encargan de aglutinar y canalizar esfuerzos ciudadanos más allá de la acción gubernamental con el fin de buscar soluciones a ciertos problemas sociales.[40]

### i.    Exención Contributiva

La exención contributiva, a las entidades y corporaciones sin fines de lucro, es un privilegio otorgado por la Asamblea Legislativa para todo aquel que cumpla con las disposiciones esbozadas en el Capítulo 10, Sección 1101.01, del Código de Rentas Internas, sec. 30471. En el caso de una corporación con fines educativos existen, a saber, dos disposiciones que pueden aplicar dependiendo el caso.

La sección 1101.01 (a)(2)(A), del precitado código, establece que podrán estar exentas organizaciones, corporaciones, fondos comunales, fondo o fundación, creados y administrados exclusivamente para:

    i. fines caritativos,
    ii. fines científicos,
    iii. fines literarios,
    iv. *fines educativos*,
    v. la prevención de maltrato o abuso de niños, personas mayores de edad o discapacitados,
    vi. la prevención de maltrato o abuso de animales,
    vii. la prevención de violencia doméstica o crímenes de odio, o
    viii. museos.

---

[39] *Id.* pág 15.
[40] *Id.* pág. 17.

Código de Rentas Internas, supra, sec. 30471. (Énfasis suplido)

Por otro lado, en la sección 1101.01 (a)(2)(D), sec. 30471, del Código en cuestión, también se establece que podrán estar exentas "Organizaciones educativas sin fines de lucro que mantengan, en el curso ordinario de sus operaciones, una facultad, un currículo establecido y una matrícula de alumnos o estudiantes que asisten regularmente a un local donde participan de actividades educativas".

Ahora bien, a esto la sección 1101.01 (a)(2)(E)(i) le añade que para estar exentas es necesario que cumplan con que ninguna parte de las utilidades netas de la organización redunda en beneficio de algún accionista o individuo particular. Código de Rentas Internas, supra, sec. 30471.

A estos efectos, el Artículo 1101.01-1 (d) del *"Reglamento para Implementar las Disposiciones del Código de Rentas Internas de 2011"*, Reglamento Núm. 8049 de 21 de julio de 2011, en adelante, Reglamento 8049, dispone que las organizaciones que brindan servicio a la comunidad pueden estar exentas bajo la Sec. 1101 del Código de Rentas Internas, supra, sec. 30471, si satisfacen los siguientes requisitos:

(1) estar organizada y operada exclusivamente para uno o más de los fines indicados en los párrafos (2), (3), (4), (5), (8)(A), (8)(B) y (9) de la Sección 1101.01 (a) del Código; y

(2) su ingreso no puede redundar ni en su totalidad ni en parte para beneficio de accionistas o individuos particulares.

(3) Requisitos de organización:

(i) Una entidad está organizada para uno o más de sus fines exentos sólo si su certificado de incorporación o de organización:

(A) limita los propósitos de dicha organización a uno o más de los fines exentos; y

(B) expresamente limita los poderes de la organización para dedicarse, en otra forma que no sea insustancial, a actividades que de por sí

no están dirigidas al logro de uno o más de sus fines exentos (…).

(ii) Al determinar si se cumple con la prueba organizacional, los fines de la organización no pueden ser más amplios, aunque sí más específicos, que los fines establecidos en los párrafos (2), (3), (4), (5), (8)(A), (8)(B) y (9) de la Sección 1101.01 (a) del Código.

(A) El hecho de que la organización haya sido operada exclusivamente para promover uno o más fines exentos no es suficiente para cumplir con la prueba organizacional.

(B) Asimismo, dicha organización no cumplirá con la prueba organizacional si fundamenta su solicitud exclusivamente en aseveraciones u otra evidencia de la intención de sus miembros de operar la organización únicamente para uno o más fines exentos.

[…]

Mientras, el Artículo 1101.01-1 (e) del Reglamento 8049, supra, establece que:

(e) Requisitos operacionales-(1) Solamente se considerará que una organización es "operada exclusivamente" para uno o más fines exentos si se dedica primordialmente a actividades encaminadas al logro de uno o más de los fines exentos especificados en los párrafos (2), (3), (4), (5), (8)(A), (8)(B) y (9) de la Sección 1101.01 (a) del Código. Si más de una parte insustancial de las actividades de la organización está dirigida a fines no exentos, se considerará que la organización no persigue sus fines exentos.

(2) Una organización es operada exclusivamente para uno o más de los fines exentos especificados en los párrafos (2), (3), (4), (5), (8)(A), (8)(B) y (9) de la Sección 1101.01 (a) del Código cuando sirve al interés público y no a intereses privados.

(i) Será necesario que una organización organizada y operada exclusivamente para fines exentos establezca que no está organizada u operada para el beneficio de intereses privados, tales como individuos particulares, el organizador o sus familiares, directores de la organización o personas controladas directa o indirectamente por dichos intereses privados.

Por otro lado, el inciso (h) de la sección aludida en este apartado, establece que:

> (h) El Secretario queda facultado, a solicitud de la entidad sin fines de lucro, ***evaluar*** la solicitud y conceder la exención, cuando la entidad solicitante haya sido reconocida como una entidad sin fines de lucro bajo la Sección 501(c)(3) del Código de Rentas Internas Federal, aun cuando no cumpla con la definición del apartado (a) de esta sección, ***siempre y cuando el Secretario considere necesario*** que dicha exención servirá a los mejores intereses de Puerto Rico.
>
> Código de Rentas Internas, supra, sec. 30471. (Énfasis suplido).

### D. Debido proceso de ley administrativo

Es harto conocido que, en la esfera administrativa, el debido proceso de ley no exige la misma rigidez que demandan los procesos judiciales. *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2022); *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010); *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329-330 (2009). Sin embargo, se ha reiterado que tales procesos deben ser justos en todas sus etapas y tienen que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate. *Román Ortiz v. OGPe*, supra, pág. 954; *Álamo Romero v. Adm. de Corrección*, supra, págs. 329-330; *López Vives v. Policía de P.R.*, 118 DPR 219, 231 (1987). Esto es así, ya que las facultades adjudicativas que han sido delegadas a las agencias administrativas intervienen con intereses de rango constitucional. *Almonte et al. v. Brito*, 156 DPR 475 (2002).

Por medio de su vertiente procesal, el debido proceso de ley atiende la adjudicación de un proceso administrativo, mediante el cual una agencia determina los derechos, obligaciones o privilegios

que corresponden a una parte. LPAUG, supra, sec. 9603 (b).  De este modo, la ejecución de la referida garantía necesariamente debe propender al ejercicio de un proceso justo y uniforme para todos los involucrados.

Conforme a lo antes expuesto, la LPAUG, supra, incorpora en sus disposiciones los criterios necesarios para asegurar la legalidad de los procesos adjudicativos administrativos.  En particular, la Sección 3.1 del aludido estatuto, así como la jurisprudencia interpretativa pertinente, reconocen a todas las partes en un procedimiento adjudicativo las siguientes garantías mínimas del debido proceso de ley en su vertiente procesal: a) ***notificación adecuada de los cargos o querellas o reclamos contra las partes***; b) derecho a presentar evidencia; c) derecho a una adjudicación imparcial y; (d) derecho a que la decisión sea basada en el expediente. LPAUG, supra, sec. 9641; *Román Ortiz v. OGPe*, supra, pág. 954; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Álamo Romero v. Adm. De Corrección,* 175 DPR 314 (2009); *Almonte et al. v. Brito*, supra; *Rivera Rodríguez & Co. v. Lee Stowell,* 133 DPR 881, 889 (1993).

El estado de derecho reconoce que la correcta y oportuna notificación de las órdenes, resoluciones y sentencias, constituye un requisito *sine qua non* para un sistema ordenado, puesto que afecta el estado procesal del caso que se atiende.  *Bco. Popular v. Andino Solís,* 192 DPR 173, 183 (2015); *R&G Mortgage v. Arroyo Torres y otros*, 180 DPR 511, 520 (2010). Para que el pronunciamiento de que trate surta efecto, no sólo debe ser emitido por un foro con jurisdicción, sino que tiene que ser adecuadamente notificado a las partes, para que, entre otras prerrogativas, estas puedan tomar las acciones ulteriores que estimen convenientes a su causa.  *R&G Mortgage v. Arroyo Torres y otros*, supra, pág. 520; *Caro v. Cardona,* 158 DPR 592, 599 (2003); R. Hernández Colón, *Derecho*

*Procesal Civil,* 5ta ed., San Juan, LexisNexis, 2010, Sec. 1701, pág. 193.

Por ello, la Ley dispone que:

[l]a agencia **deberá notificar con copia simple y por correo certificado, a las partes, y a sus abogados,** de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma.

LPAUG, supra, sec. 9654.

### III.

El recurrente plantea que la Agencia erró al realizar una defectuosa notificación de la carta del 1 de diciembre de 2017. Alegó que, en la misma, nunca se le explicó el fundamento mediante el cual basaron la denegatoria. *No le asiste razón.*

Como vimos, la Agencia le denegó a la recurrente la exención contributiva a la Academia, al amparo de la Sección 1101.01 del Código de Rentas Internas, supra. Por entender que la notificación de la denegatoria fue defectuosa, el querellante presentó una querella. Sin embargo, una somera lectura de la misiva mediante la cual se notificó la decisión administrativa deja claro que Hacienda fundamentó su decisión. En la misma expuso que la Academia no cumplía con los "requisitos dispuestos en el Artículo 1101.01-1 del Reglamento, de estar organizada y operada para promover fines exentos. Las operaciones que lleva a cabo la organización constituyen un negocio para sus miembros, por lo cual opera para beneficio de intereses privados. La organización tampoco cumple con las disposiciones de la Sección 1101.01(d)(2) de la Ley Núm. 1".[41]

---

[41] Apéndice del Recurso, págs. 14-15.

Luego de evaluar los documentos que obran en el expediente, en especial la misiva de la denegatoria, resulta inescapable concluir que el *primer error no se cometió*, y la notificación no adoleció del defecto apuntalado.

En su *segundo error*, el recurrente arguye que la Agencia erró, cuando permitió que el Oficial Examinador se excediera en sus funciones, e impidió que el Secretario de Hacienda atendiera la solicitud de exención contributiva. *No le asiste razón.*

Como vimos, en su Artículo 3(j), el Plan de Reorganización del Departamento de Hacienda le confiere al Secretario la facultad de delegar cualquier función, siempre y cuando esta no se trate de la aprobación de reglamentos o no esté exclusivamente delegada a este por ley. Atender las solicitudes de exención contributiva no es una facultad que la Ley haya expresamente delegado únicamente al Secretario de Hacienda. Además, reiteramos que la LPAUG, supra, en su Sección 3.1, autoriza la delegación de estas funciones, en asuntos relevantes a las leyes de rentas internas del país.

Finalmente, resulta improcedente el argumento de la parte recurrente, en cuanto a que el Secretario de Hacienda debió atender su solicitud de exención contributiva, por ser una organización sin fines de lucro bajo la sec. 501(3) del Código de Rentas Federal, supra. La Academia nos arguye esto, ya que la Sección 1101.01(h) de nuestro Código de Rentas Interna, supra, indica que el secretario ***puede*** conceder la exención contributiva para organizaciones, reconocidas bajo el código federal como entidades sin fines de lucro, aun cuando estas no cumplan con las disposiciones de la Sección 1101.01(a) de nuestro Código de Rentas Interna, supra. Sin embargo, el inciso (h) que nos ocupa tiene un *caveat*, en el que condiciona este permiso ***"siempre y cuando el secretario considere que dicha exención servirá a los mejores intereses de Puerto Rico"***.

Finalmente, luego de evaluar la normativa en derecho que atiende las facultades del secretario, con relación a la controversia en el caso de marras, justipreciamos y concluimos lo siguiente:

(1) Que esa facultad *es discrecional* del secretario y no una orden a conceder dicha exención;

(2) Que la facultad *la ejercerá el secretario o a quién este delegue* en su nombre y;

(3) que se refiere a entidades *SIN FINES LUCRATIVOS* que no se identifiquen como las distintas etiquetas o nombres tales como asociación, organización, fideicomisos, iglesias, ligas, juntas, clubes, etc. Es decir, *no significa que tiene la facultad de conceder la exención de organizaciones sin fines de lucro a una organización que en reiteradas ocasiones ha demostrado tener fines lucrativos* en beneficio de algún accionista o individuo particular, en este caso, su presidente.

**IV.**

Por los fundamentos que anteceden, *confirmamos la "Resolución" recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente por entender que, el Departamento de Hacienda, a través del Secretario o el funcionario en quien este delegue, debió evaluar si la entidad, a la que el Gobierno Federal le reconoció exención, conforme a la Sección 501(c)(3) del Código de Rentas Internas Federal, podía obtenerla, a pesar de que no cumpliera con los requisitos estatales, si el Secretario consideraba que la exención servía a los mejores intereses de Puerto Rico. 13 LPRA sec. 3047(h).

Aunque se pudiera considerar que la petición fue presentada tardíamente, adviértase que la exención federal fue concedida ya comenzado el proceso administrativo. El procedimiento ante las agencias es uno informal en el que, en aras de cumplir con la evaluación rigurosa del artículo, se debió haber considerado el planteamiento.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones